# EXHIBIT E

USDC SDNY
DOCUMENT ELECTRONICALLY
FILED
DOC#: _____
DATE FILED: ___2|15|8___

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x

   **DAVID KELLY,**                :
                                 :
                   **Plaintiff,**  :
                                 :      **1:17-cv-2432 (ALC)**
      **-against-**            :
                                 :      **MEMORANDUM & ORDER**
   **JEFFERIES GROUP, INC. and FRED**  :
   **OSTROVE,**               :
                                 :
               **Defendants.**  :
                                 :
                                 :

-------------------------------------------------------------x

**ANDREW L. CARTER, JR., United States District Judge:**

## I. INTRODUCTION

     In this diversity action transferred from the Northern District of Texas, Defendants move to dismiss the Amended Complaint of Plaintiff David Kelly ("Kelly"). Kelly alleges that Defendants, among other things, gave him fraudulent advice regarding his investment in Palmaz Scientific, Inc. ("Palmaz"), a Texas-based biotechnology company.

     Kelly's complaint lists five causes of action against both Jefferies Group, Inc. ("Jefferies") and Fred Ostrove ("Ostrove"). Kelly alleges common-law fraud, fraudulent concealment, breach of fiduciary duty, negligent misrepresentation, and professional negligence. For the reasons discussed below, Defendants' motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**.

## II. BACKGROUND

### A. *Factual Background*

     For the purposes of this motion, the Court takes Plaintiff's allegations as true and draws all reasonable inferences in his favor.

Plaintiff is a graduate of Harvard Business School and former Chief Executive Officer and Chairman of publicly-traded Matthews International Corp. *See* Decl. of Scott Balber ("Balber Decl."), Ex. A (Bloomberg Profile) (ECF No. 44-1).[1]  Defendant Jefferies is a SEC-registered broker-dealer and member firm of FINRA.  Amended Complaint ("Am. Compl.") ¶ 9 (ECF No. 39).  Defendant Ostrove was an employee, agent, and authorized representative of Jefferies who represented Jefferies in its dealings with Plaintiff.  *Id.*  Since 2006, Ostrove had been Plaintiff's financial adviser and investment broker, and Plaintiff had been, during all relevant times, accustomed to relying on Ostrove for advice.  *Id.* ¶ 10.

Around 2010, Ostrove recommended that Plaintiff invest in Palmaz, representing it as a "safe, low risk investment which would lead to significant profits for Plaintiff."  *Id.* ¶¶ 11-12. Defendants presented Plaintiff with a Private Placement Memorandum ("PPM") for the Palmaz offering, "prepared by Defendants" and dated September 2010.  *Id.* ¶ 13, Ex. A (PPM).[2] According to the PPM, Palmaz was formed in 2008 following a merger of two companies that were also in the business of discovering technologies for medical implant devices.  *Id.* ¶ 16.

---

[1] Given that Plaintiffs do not dispute the authenticity of these materials, and that the facts contained therein are capable of a ready and accurate determination, the Court may take judicial notice of the information on this webpage in conjunction with a motion to dismiss without having to convert the motion into a summary judgment motion. *Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 166 (S.D.N.Y. 2015).

[2] In consideration of this motion, the Court may properly consider documents - such as the PPM - "attached to the complaint as exhibits, or incorporated by reference, as well as any documents that are integral to, or explicitly referenced in, the pleading." *Brown v. N.Y.C. Hous. Auth.*, No. 05-CV-10332 (VM), 2006 WL 1378599, at *2 (S.D.N.Y. May 17, 2006) (citing *Stuto v. Fleishman*, 164 F.3d 820, 826 n.1 (2d Cir. 1991)).  As Plaintiff appears to concede, this extends to the Subscription Agreement that Plaintiff executed in connection with this transaction as well, even though it is not referenced in the Amended Complaint.  *See* Balber Decl., Ex. B (subscription agreement); *see also, e.g.*, *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) (finding stock purchase agreement, though not incorporated by reference into complaint, sufficiently "integral" to Complaint so as to not require conversion of motion to dismiss in securities fraud case, in light of Plaintiff's notice of document and importance of document to the case, among other reasons); *Belin v. Weissler*, No. 97-CV-8787 (RWS), 1998 WL 391114, at *4 (S.D.N.Y. July 14, 1998) (considering, in addition to factors articulated in *Cortec*, that Plaintiff cited to documents in opposition papers, and that Plaintiff had to rely on documents to prove claims); *cf. Anwar v. Fairfield Greenwich Ltd.*, 831 F. Supp. 2d 787, 793 (S.D.N.Y. 2011), *aff'd sub nom. Pujals v. Standard Chartered Bank*, 533 F. App'x 7 (2d Cir. 2013) (declining to consider Placement Memorandum submitted by Defendants because it was unexecuted and therefore not clear Plaintiff had received it).

The PPM, which states that it was prepared by Palmaz, expressly cautions that investing in the private offering is "speculative and involves a high degree of risk" and identifies multiple "Risk Factors" associated with the investment and the difficulties of commercializing the company's technology, including the fact that the company had no earnings history and would be operating at a loss for the "foreseeable future." PPM at 30-39. The document expressly states that neither Jefferies nor its employees assumes any responsibility for the "accuracy or completeness" of any representations in the PPM and that nothing contained in the PPM "is, or shall be, relied upon as a promise, representation or warranty." *Id.* at ii-iii. The PPM goes on to say that "Jefferies has not independently verified any . . . information [in the PPM], assumes no responsibility for its accuracy or completeness and shall have no liability for any representations (express or implied) contained in, or for any omissions from, this Memorandum or any other written or oral communications transmitted to the recipient in the course of their evaluation of the Company." *Id.* Finally, it indicates that "no person, including Jefferies has been authorized to give any information other than that contained in [the PPM], or to make any representations in connection with this offering. If given or made, such other information or representation must not be relied upon . . . ." *Id.* at ii.

On or around October 31, 2010, Plaintiff invested $200,000 in Palmaz through a private placement of Class B convertible stock. *Id.* ¶ 23.[3] Ostrove continued to represent Plaintiff with

---

[3] Defendants claim, referencing the date of the Subscription Agreement, that the purchase date was actually February 11, 2011. *See* Memorandum of Law in Support of Defendant Jefferies Group LLC's Motion to Dismiss the Amended Complaint ("Def's Mem.") at 2 n.3 (ECF No. 43). Plaintiff does not contest Defendants' assertion in his opposition papers. "[T]he Court is not required to accept as true pleadings that are directly contradicted by other factual statements in the Amended Complaint," *Barberan v. Nationpoint*, 706 F. Supp. 2d 408, 424 (S.D.N.Y. 2010). Further "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular . . . matters of which a court may take judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Here, as discussed above, *supra* n.2, the Subscription Agreement is an appropriate source for the Court's consideration. It is self-evident that Plaintiff did not invest on both October 31, 2010 and February 11, 2011, so this evidence is directly contradictory and Plaintiff's

respect to this investment throughout the investment's history, providing him with periodic advice and recommendations. *Id.* ¶ 23. At some point, Defendants are alleged to have made the following further misrepresentations (or omissions):

(a) In late 2010, when presenting Palmaz as an investment opportunity to Plaintiff, Ostrove represented to Plaintiff that in addition to the deal being underwritten by Defendant Jefferies, he had done his own due diligence in Palmaz (*Id.* ¶ 20);

(b) Defendants made numerous misrepresentations and/or failed to disclose material facts related to Palmaz, its background, its officers, financial dealings, securities history and overall financial condition (*Id.* ¶¶ 24, 57);

(c) Defendants misrepresented they had done their due diligence in Palmaz and failed to disclose both prior to 2010 and after 2010, Palmaz had realized significant financial losses, failed to generate much if any revenue and had failed to even commercialize many of the products it purported to be selling. (*Id.*);

(d) Despite representing to Plaintiff they had done their own due diligence in Palmaz, Defendants failed to disclose Palmaz had no audited financial statements – and then recommended the securities to Plaintiff anyway. (*Id.*);

(e) Jefferies' PPMs made affirmative misrepresentations and untruthful statements about Palmaz and its "cutting edge" technology that was really worthless, and stating certain devices were in the CE Mark approval process that were not. (*Id.* ¶ 25);

(f) Defendants failed to disclose that several trademarks concerning the "state-of-the-art" equipment Palmaz was purportedly commercializing had actually been abandoned long ago. (*Id.* ¶ 28);

(g) Defendants further represented to Plaintiff that Palmaz were unrivaled experts in creating and selling state-of-the-art technology but failed to disclose the numerous failures identified with Palmaz's alter ego company, ABPS, and its failed efforts to commercialize the same technology Palmaz was purporting to commercialize. (*Id.*);

---

allegations are not entitled to acceptance as truth on this motion to dismiss. In any event, the discrepancy between these dates is essentially immaterial to the analysis that follows.

(h) Defendants failed to disclose to Plaintiff that Palmaz was paying its officers grossly inflated salaries from Plaintiff's contributions and Palmaz's revenue. (*Id.* ¶ 29);

(i) Defendants represented to Plaintiff that Ostrove was personally acquainted with Palmaz's CEO, Solomon, and that Solomon was a person of the highest integrity, was highly skilled, and had been a top executive who achieved unfettered success for several public and private companies for more than twenty (20) years when in reality he had his FINRA broker registration terminated and he was fined by FINRA for allegations he wrongfully authorized the transfer of funds from an account of a customer to his own and that he had filed for bankruptcy (*Id.* ¶ 30).

Each of the above misrepresentations was material to Plaintiff's decision to purchase Palmaz stock. Am. Compl. ¶ 64.

In the Subscription Agreement that Plaintiff executed in connection with his purchase of Palmaz stock, he represented that he had "the knowledge and experience in financial and business matters necessary to evaluate the investment" and had "carefully reviewed and underst[ood] the risks" of his investment. Balber Decl., Ex. B at 3. Plaintiff further agreed that neither Jefferies nor "any of its representatives" had "any responsibilities as to the validity, accuracy, value or genuineness of any information" provided "in connection" with the investment. *Id.* at 10. Plaintiff also represented that he had "relied only on the information contained in [the PPM] and Management Presentation" and "furnished or made available" by Palmaz. *Id.* at 3. Additionally, Plaintiff agreed that he had been "furnished . . . all information that [he] deemed necessary or appropriate in order to form a decision concerning [his] investment" in Palmaz and that he had "investigated" the investment. *Id.* at 3.

In March 2016, Palmaz filed for Chapter 11 bankruptcy protection. Am. Compl. ¶ 32. In addition to the misrepresentations listed above, Plaintiff complains that Defendants failed to disclose that Palmaz was ultimately a "dysfunctional entity completely dominated and controlled by a small number of self-dealing insiders[.]" *Id.* ¶ 15. These directors and officers "did little to

actually operate the company and commercialize its equipment[,]" but rather "enriched themselves with grossly inflated compensations" and stripped the company of any assets it had prior to its bankruptcy. *Id.*

B. *Procedural Background*

Plaintiff filed this action in Texas state court on October 24, 2016. *See* Notice of Removal, Ex. A (ECF No. 1). Jefferies timely removed the action to the United States District Court for the Northern District of Texas on November 14, 2016. *Id.* By an order dated April 4, 2017, the case was transferred to this District and assigned to the undersigned. *See* Order Granting Motion to Transfer (ECF No. 24). On June 26, 2017 and July 3, 2017, Defendants moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Defendant Jefferies Group LLC's Motion to Dismiss the Amended Complaint (ECF Nos. 42-44); *see also* Motion to Dismiss of Fred Ostrove (joining Jefferies' motion in its entirety) (ECF No. 48).

## III. DISCUSSION

### A. Legal Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a claim must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

On a motion to dismiss, the court accepts the plaintiff's allegations as true. *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). Further, the court must "draw all reasonable inferences in favor of the plaintiff[.]" *Id.* (citing *Fernandez v. Chertoff*, 471 F.3d 45,

51 (2d Cir. 2006)). But, the court need not accept allegations that are merely conclusions of law. *Kassner*, 496 F.3d at 237 (complaint inadequate if it "merely offers labels and conclusions or a formulaic recitation of the elements of a cause of action"). Therefore, on a motion to dismiss, "[t]he appropriate inquiry is not whether a plaintiff is likely to prevail, but whether he is entitled to offer evidence to support his claims." *Fernandez*, 471 F.3d at 51 (internal quotation marks and citation omitted).

While the statute of limitations is an affirmative defense, it "may be raised by a pre-answer motion to dismiss under Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of the complaint." *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998) (citing *Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989)). Thus, a 12(b)(6) motion raising a statute of limitations defense "may be granted only where 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.'" *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004) (quoting *Citibank, N.A. v. K–H Corp.*, 968 F.2d 1489, 1494 (2d Cir. 1992)). As such, "the plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the [statute of limitations] defense." *Id.*

### B. Analysis

Defendants contend that the Amended Complaint should be dismissed in its entirety, arguing that Plaintiff has failed to state a claim, and that each claim is barred by the applicable statutes of limitations. Each contention is addressed in turn.

1. *Statute of Limitations*

   a. *Governing Law*

The parties agree that Texas law governs a statute-of-limitations analysis. Indeed, as statute-of-limitations analyses are procedural and not substantive, this Court must be guided by Texas choice-of-law principles to determine the applicable statutes of limitations. *See JM Vidal, Inc. v. Texdis USA, Inc.*, 764 F. Supp. 2d 599, 610 (S.D.N.Y. 2011) ("Where, as here, an action is transferred pursuant to 28 U.S.C. § 1404(a), the transferee court must follow the choice-of-law rules that prevailed in the transferor court.") (quoting *Fin. One Pub. Co. Ltd. v. Lehman Bros. Special Fin., Inc.*, 414 F.3d 325, 333 (2d Cir. 2007)). Texas choice-of-law rules specify that a Texas court should apply its own statute of limitations even where it must apply the substantive law of a foreign state. *Carroll v. Jaques*, 927 F. Supp. 216, 219 (E.D. Tex. 1996). Thus, the Court applies the applicable Texas statutes of limitations in considering Defendants' motion to dismiss.

   b. *Plaintiff's Claims Are Not Conclusively Time Barred.*

Under Texas law, when a moving party seeks to dismiss a claim as time barred, the movant has the burden of "conclusively establish[ing] that defense, including the accrual date of the cause of action." *Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 846 (Tex. 2005). "Generally, accrual occurs on the date the plaintiff first becomes entitled to sue the defendant based upon a legal wrong attributed to the latter, even if the plaintiff is unaware of the injury." *Vaught v. Showa Denko K.K.*, 107 F.3d 1137, 1140 (5th Cir. 1997) (quoting *Zidell v. Bird*, 692 S.W.2d 550, 554 (Tex. App. 1985)). "Under Texas' discovery rule, [however,] the limitations period is tolled until the plaintiff discovers, *or through the exercise of reasonable diligence*

*should have discovered*, the nature of her injury." *Id.* (citing *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 351 (Tex. 1990)).

Here, Defendants argue, among other things, that each of Plaintiff's causes of action is barred by the relevant statute of limitations and the discovery rule does not apply. Notably, the question of reasonable diligence (as it relates to the discovery rule) is a question of fact, but "may be determined as a matter of law when there is actual or constructive notice or when information is readily accessible and publicly available." *Tech Pharmacy Servs., LLC v. Alixa Rx LLC*, No. 4:15-CV-766, 2017 WL 3167652, at *2 (E.D. Tex. July 25, 2017) (quoting *Hooks v. Samson Lone Star, LP*, 457 S.W.3d 52, 58 (Tex. 2015)). As such, unless Defendants can "conclusively" show the information that forms the basis of Plaintiff's complaint was available to him outside the relevant statute of limitations, the Court cannot dismiss Plaintiff's case on statute-of-limitations grounds at this stage.

While Defendants insist that the PPM sufficiently disclosed the risks of the Palmaz investment and that Plaintiff was obliged to do his own due diligence, Plaintiff contends, among other things, that Defendants did not provide sufficient information to him, that no amount of due diligence would have revealed the basis for Plaintiff's claims, and that he did not discover the basis for his claims until 2015. *See* Am. Compl. ¶¶ 31-32, 67. In light of the Court's obligation to accept the truth of Plaintiff's allegations at this stage, Plaintiff's complaint is sufficient to create factual issues worthy of discovery as to Defendants' statute of limitations defenses.

### 2. *Substantive Claims*

Defendants next contend that Plaintiff has failed to state a cognizable cause of action. Specifically, with respect to Plaintiff's fraud and fraudulent concealment claims, Defendants

claim that Plaintiff has failed to plead an actionable and material misstatement with particularity, an intent to deceive on the part of Defendants, reasonable reliance on Plaintiff's part, and that Defendants had a duty to disclose any facts that Plaintiff alleges Defendants omitted.

Additionally, with respect to Plaintiff's breach of fiduciary duty claim, Defendants argue that Plaintiff fails to sufficiently allege that Defendants owed him a fiduciary duty. Defendants next contend that Plaintiff's negligent misrepresentation claim fails for many of the reasons his fraud claim fails. Finally, Defendants assert that Plaintiff's professional negligence claim fails because Defendants owed Plaintiff no duty of care.

Each argument is addressed in turn.

### a. *Choice of Law*

Preliminarily, the applicable substantive law must be addressed. Plaintiff does not expressly concede that New York law governs this dispute, noting that, though Defendants are New York residents, Plaintiff is a Florida resident who had invested in a Texas-based company. *See* Plaintiff's Memorandum of Law in Opposition to Defendant Jefferies Group, Inc.'s Motion to Dismiss the Amended Complaint ("Pl's Mem.") at 11 n.2 (ECF No. 51). However, Plaintiff presents no further argument, acknowledges that there are no "significant differences in law [among the three states] as to the causes of action asserted[,]" and then proceeds to ground his opposition in New York law. *Id.* This implies some measure of consent to New York law governing this dispute. *See Fleisher v. Phoenix Life Ins. Co.*, 858 F. Supp. 2d 290, 298 (S.D.N.Y. 2012). Nonetheless, out of the abundance of caution, the Court will conduct a brief choice-of-law analysis.

As discussed above, this Court must apply the transferor court's choice-of-law rules to assess the governing substantive law. *See, e.g., Concorde Funds, Inv. v. Value Line, Inc.*, No. 04-

CV-9932 (NRB), 2006 WL 522466, at *6 (S.D.N.Y. Mar. 2, 2006) ("Because this case was

transferred from the Northern District of Texas, Texas choice of law principles apply."). "In

Texas, all conflicts cases sounding in tort will be governed by the 'most significant relationship'

test as enunciated in Sections 6 and 145 of the Restatement (Second) of Conflicts." *Id.* (quoting

*Gutierrez v. Collins*, 583 S.W.2d 312, 318 (Tex. 1979)). Section 6 provides general principles

by which to apply the specific factors laid out in Section 145, which are as follows:

> (1) The rights and liabilities of the parties with respect to an issue in tort are determined
> by the local law of the state which, with respect to that issue, has the most significant
> relationship to the occurrence and the parties under the principles stated in § 6.
> (2) Contacts to be taken into account in applying the principles of § 6 to determine the
> law applicable to an issue include:
>> (a) the place where the injury occurred,
>> (b) the place where the conduct causing the injury occurred,
>> (c) the domicil [sic], residence, nationality, place of incorporation and place of
>> business of the parties, and
>> (d) the place where the relationship, if any, between the parties is centered.

*Id.* (quoting *Gutierrez*, 583 S.W.2d at 319). The general choice-of-law factors set forth in

Section 6 of the Restatement are: (1) the needs of the interstate and International systems; (2) the

relevant policies of the forum; (3) the relevant policies of other Interested states and the relative

interests of those states in the determination of the particular issue; (4) the protection of justified

expectations; (5) the basic policies underlying the particular field of law; (6) certainty,

predictability and uniformity of result; and (7) ease in the determination and application of the

law to be applied. *See* Restatement (Second) Conflict of Laws § 6(2) (1971).

Weighing these provisions, the Court determines that New York law applies to this

action. Here, Plaintiff is a citizen of Florida, and his complaint arises out of the fraudulent

advice given to him by a New York-resident financial advisor from a financial institution based

in New York regarding an investment in a Texas-based company. It thus appears that, although

the injury might be said to have occurred in Florida, the parties' business relationship was

centered in New York, a substantial portion of the alleged conduct causing the injury occurred in

New York, and that Defendants are based in New York. Thus, New York has the most

significant relationship to the occurrences described in Plaintiff's complaint. *See, e.g.*,

*Greenberg Traurig of N.Y., P.C. v. Moody*, 161 S.W.3d 56, 76 (Tex. App. 2004) (applying New

York over Texas law in investor fraud suit, where, despite Plaintiff investors being based in

Texas, most of the fraudulent activities occurred in New York, and New York had "substantial

interest in regulating fraudulent conduct occurring in New York" related to securities industry).

The Court therefore applies New York law, as the parties do, for the purposes of this motion.

### b. *Fraud and Fraudulent Concealment*

In New York, a common-law fraud claim must allege "that the defendant knowingly or

recklessly misrepresented a material fact, intending to induce the plaintiff's reliance, and that the

plaintiff relied on the misrepresentation and suffered damages as a result." *Merrill Lynch & Co.*

*Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 181 (2d Cir. 2007) (citing *Jo Ann Homes at*

*Bellmore, Inc. v. Dworetz*, 250 N.E.2d 214 (N.Y. 1969)). Rule 9(b) of the Federal Rules of Civil

Procedure also requires "particularity" from a fraud pleading, such that the plaintiff must "(1)

specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3)

state where and when the statements were made, and (4) explain why the statements were

fraudulent." *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004). And, "[i]n cases where the

alleged fraud consists of an omission and the plaintiff is unable to specify the time and place

because no act occurred, the complaint must still allege: (1) what the omissions were; (2) the

person responsible for the failure to disclose; (3) the context of the omissions and the manner in

which they misled the plaintiff, and (4) what defendant obtained through the fraud." *Odyssey Re*

*(London) Ltd. v. Stirling Cooke Brown Holdings Ltd.*, 85 F. Supp. 2d 282, 293 (S.D.N.Y. 2000),

*aff'd*, 2 F. App'x 109 (2d Cir. 2001). "The primary purpose of Rule 9(b) is to afford defendant fair notice of the plaintiff's claim and the factual ground upon which it is based." *Ross v. Bolton*, 904 F.2d 819, 823 (2d Cir. 1990) (citing *Denny v. Barber*, 576 F.2d 465, 469 (2d Cir. 1978)). "Allegations that are conclusory or unsupported by factual assertions are insufficient." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd*., 493 F.3d 87, 99 (2d Cir. 2007) (citing *Luce v. Edelstein*, 802 F.2d 49, 54 (2d Cir. 1986)).

And, "although Rule 9(b) permits knowledge to be averred generally, [courts] have repeatedly required plaintiffs to plead the factual basis which gives rise to a strong inference of fraudulent intent." *O'Brien v. Nat'l Prop. Analysts Partners*, 936 F.2d 674, 676 (2d Cir. 1991) (internal quotations omitted). A strong inference "may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290-91 (2d Cir. 2006). Strong circumstantial evidence includes a showing that a defendant (1) "benefitted in a concrete and personal way from the purported fraud"; (2) "engaged in deliberately illegal behavior"; (3) "knew facts or had access to information suggesting that their public statements were not accurate"; or (4) "failed to check information they had a duty to monitor." *ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 199 (2d Cir. 2009).

### i. Misstatements in the PPM

Defendants argue that, because the contents of the PPM are attributable to Palmaz alone, they cannot form the basis of a fraud claim.

"To be liable for fraud under New York law, the defendant must actually make a materially false statement to the plaintiff." *Employees' Ret. Sys. of Gov't of Virgin Islands v.*

*Morgan Stanley & Co.*, 814 F. Supp. 2d 344, 353 (S.D.N.Y. 2011) (collecting cases). At the motion to dismiss stage, even where a plaintiff alleges a materially false statement in a document authored by Defendant, if the document itself, incorporated into the complaint, contradicts plaintiff's claim with respect to authorship, the Court need not accept plaintiff's allegation as true. *Id.* (collecting cases).

Here, the PPM indicates that Palmaz "prepared this Confidential Private Placement Memorandum . . . in connection with a private placement offering of its Series B Convertible Preferred Stock[.] . . . . [Palmaz] prepared it solely for use in connection with this offering." PPM at ii. In addition, the PPM states that "nothing contained herein is, or shall be, relied upon as a . . . representation" on the part of Jefferies, and that Jefferies "assumes no responsibility for [the PPM's] accuracy or completeness and shall have no liability for any representations (express or implied) contained in, or any omissions from, this Memorandum . . ." PPM at ii-iii. This language unambiguously disclaimed Jefferies' involvement in preparing the PPM. As such, even though Jefferies may have transmitted the PPM to Plaintiff, and placed its seal upon it, the disclaimer at the outset of the PPM makes clear that any statements therein were only attributable to Palmaz. *See Morgan Stanley*, 814 F. Supp. 2d at 353 (holding that statements in offering were not actionable because of nearly identical disclaimers); *Woori Bank v. Citigroup Inc.*, No. 12-CV-3868 (LTS), 2013 WL 1235648, at *4 (S.D.N.Y. Mar. 27, 2013) (same).

Plaintiff cites three SEC administrative decisions in an attempt to undermine this argument. But, not only are those decades-old decisions non-binding on this Court, but they do not, among other deficiencies, purport to address a disclaimer of this nature.

Therefore, Plaintiff fails to allege an actionable misstatement in the PPM attributable to Defendants.[4]

> ii. *Particularity and Materiality of Other Alleged Misstatements*

Defendants next contend that the remaining misstatements alleged by Plaintiff are either immaterial or not sufficiently particularized under Rule 9(b). The Court agrees. Almost none of the allegations specify where or how the misstatements (or omissions) were made, nor when or by whom they were made. *See, e.g., Hunt v. Enzo Biochem, Inc.*, 530 F. Supp. 2d 580, 593 (S.D.N.Y. 2008) ("The pleadings must adequately specify the statements that were allegedly false or misleading, provide particulars as to the alleged falsity of the statements, state the time and place the statements were made, and identity the persons who made them.") (citing *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004)).

Plaintiff alleges a nearly ten-year period during which Ostrove served as his financial advisor. See Am. Compl. ¶¶ 10, 23. Plaintiff does specify roughly when some of the alleged misrepresentations were made (*e.g.*, "late 2010"), but the bulk of the alleged misstatements lack such timeframes. Courts in this Circuit have issued conflicting rulings on the time period within which a statement can be alleged and still be found to satisfy particularity. *Compare Sequa Corp. v. Bailey*, No. 88-CV-7161 (JFK), 1989 WL 60036, at *3 (S.D.N.Y. June 1, 1989) (finding that three months was too broad a period to satisfy particularity), *with Jubran v. Musikahn Corp.*, 673 F. Supp. 108, 112 (E.D.N.Y. 1987) (finding particularity for a statement alleged somewhere within a three-and-one-half month period). However, in keeping with the purpose of Rule 9(b),

---

[4] Plaintiff's complaint at times refers to "PPMs" in the plural, but only one PPM is annexed to it. To the extent Plaintiff alleges fraud arising out of additional PPMs, he fails to sufficiently plead statements contained in those PPMs, or that Defendants ever sent those PPMs to him. *See* Am. Compl. ¶ 27; *see also, e.g., Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 200 (S.D.N.Y. 2011) (holding that "to the extent that Plaintiffs appear to point to some specific documents containing misrepresentations, they must identify the documents and the specific statements within them that were false or misleading").

courts are willing to tolerate greater ambiguity in a specified time period when, as a whole, other allegations about a fraudulent statement provide a party with sufficient notice to prepare its defense. *See Mayatextil, S.A. v. Liztex U.S.A., Inc.*, No. 92-CV-4528 (LJF), 1993 WL 51094, at *2 (S.D.N.Y. Feb. 24, 1993) (14-month period is particular because complementary "factual allegations are sufficiently detailed to provide defendants with the opportunity to answer"); *Jubran*, 673 F. Supp. at 112 (three-and-a-half month period is particular because "plaintiffs have alleged sufficient additional facts to enable [defendant] to prepare a defense and refute plaintiffs' allegations"); *cf. In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, No. 02-MDL-1484 (JFK), 2008 WL 2594819, at *10 (S.D.N.Y. June 26, 2008) (one-year period insufficiently particular when "complaint fails to identify: a single specific false statement; a single research report that contained allegedly false statements; the author(s) of the false statements; why the (unspecified) statements were in fact false when made).

Here, even where Plaintiff does vaguely allege a timeframe, his allegations fail to pass muster for a number of additional reasons. For one, most of the misstatements and/or omissions are alleged to have been made by "Defendants" as a whole, which is insufficient. *See, e.g., In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*, 763 F. Supp. 2d 423, 485 (S.D.N.Y. 2011) (holding that "a claim may not rely upon blanket references to acts or omissions by all of the defendants, for each defendant named in the complaint is entitled to be appraised of the circumstances surrounding the fraudulent conduct with which he individually stands charged") (citing *In re Livent, Inc. Sec. Litig.*, 78 F. Supp. 2d 194, 213 (S.D.N.Y. 1999)). Plaintiff does not allege that Ostrove made each of these statements and that Plaintiff is attributing these statements to all "Defendants" by nature of vicarious liability. *Cf. Meisel v. Grunberg*, 651 F. Supp. 2d 98, 120 (S.D.N.Y. 2009) (declining to find "blanket references" to

16

"all defendants" insufficiently particularized where complaint made clear that representations attributed to all defendants were based on their relationship with the primary violator) (citing *Green v. Beer*, No. 06-CV-4156 (KMW) (JCF), 2009 WL 911015, at *6 (S.D.N.Y. Mar. 31, 2009)). Rather, the Amended Complaint expressly leaves open the possibility that other Jefferies employees were responsible for alleged misrepresentations. *See* Am. Compl. ¶ 8.

And, in most circumstances, the content of the misstatements is not sufficiently clear. *See, e.g.*, *Ellington Credit Fund*, 837 F. Supp. 2d at 199 (concluding that misrepresentations were insufficiently particular where "identified in vague and general terms, concerning only the general topics as to which they were related"). For example, Plaintiff often alleges misrepresentations were made as to general topics but then goes on to describe omissions (rather than affirmative statements), or fails to state what specifically was stated to him regarding those subjects. *See, e.g.*, Am. Compl. ¶ 24 ("Unfortunately for Plaintiff, the representations made by Defendants regarding the investment in PSI were utterly and completely false. In reality, Defendants made numerous misrepresentations . . . related to PSI, its background, its officers and overall financial condition."); *id.* ¶ 28 ("Defendants . . . affirmatively misrepresented . . . facts pertaining to PSI's purported intellectual property portfolio and ownership as well as its existing obligations under contracts with third parties."). Similarly, pleading that Plaintiff was "[led] to believe" a set of circumstances were true, without specifying the alleged acts/statements that caused such a belief, does not satisfy Rule 9(b). *See id.* ¶ 21; *see also McLaughlin v. Anderson*, 962 F.2d 187, 191 (2d Cir. 1992) (to satisfy particularity requirement the "complaint must adequately specify the statements it claims were false or misleading").

Even where Plaintiff's alleged misstatements are clearer, they border on immaterial puffery. *See* Am. Compl. ¶¶ 11-12 (alleging that Defendants recommended Palmaz as "safe, low

risk investment which would lead to significant profits for Plaintiff"); *id.* ¶¶ 20-21 (alleging that "Ostrove represented to Plaintiff that, based on his findings, investing in PSI would lead to substantial appreciation of his investment contribution[,]" and that Defendants represented that Palmaz were "unrivaled experts in creating and selling state-of-the-art technology"); *see also, e.g., Wang v. Bear Stearns Cos. LLC*, 14 F. Supp. 3d 537, 545 (S.D.N.Y. 2014) (surveying examples of mere optimistic statements found to not be actionable misrepresentations where speaker did not provide "guarantees or . . . specific statements of fact") (quoting *In re Int'l Bus. Machs. Corp. Sec. Litig.*, 163 F.3d 102, 107 (2d Cir. 1998)).[5]

The omissions that Plaintiff alleges are similarly infirm. *See Odyssey*, 85 F. Supp. 2d at 293 (stating the pleading requirements for fraud based on omission). For example, Plaintiff alleges that Defendants failed to disclose material financial "information" about Palmaz, but fails to specify, among other things, what that information was. *See* Am. Compl. ¶ 24; *see also Odyssey*, 85 F. Supp. 2d at 294 ("At a minimum, 9(b) means that plaintiffs may not maintain an action in fraud by simply alleging a failure to disclose 'information.'").

Plaintiff's only response to Defendants' particularity arguments is a mere reproduction, in list form, of the misrepresentations he alleges in his complaint, and a conclusory claim that misrepresentations "are more than adequately pled." Pl's Mem. at 11-12. Plaintiff cites no case law relieving him of the obligation to plead misrepresentations with the requisite particularity, and the Court is aware of no such exception. For these reasons, the Court concludes that Plaintiff has failed to adequately plead his fraud claims pursuant to Rule 9(b).

---

[5] Given the incompleteness of the alleged misrepresentations, the Court will not yet formally pass on whether the alleged misstatements are, in fact, sufficiently material. This inquiry is fact-specific, and thus ill-suited for a motion to dismiss. *See Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 162 (2d Cir. 2000) ("We have held that, when presented with a Rule 12(b)(6) motion, a complaint may not properly be dismissed . . . on the ground that the alleged misstatements or omissions are not material unless they are so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance.") (quoting *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985)).

### iii.  Intent to Deceive

Defendants next argue that Plaintiff has failed to plead facts leading to a "strong inference" of fraudulent intent.[6]  The Court agrees.

Plaintiff argues that he has pleaded a sufficient intent to deceive in light of his mere allegation that Defendants knew the representations were false at the time they were made.  Pl's Mem. at 18 (citing *Sterling Nat'l Bank v. Ernst & Young, LLP*, 862 N.Y.S.2d 811, 2005 NY Slip. Op. 51850[U], at *6 (N.Y. Sup. Ct. 2005)); *see* Am. Compl. ¶¶ 21, 38, 66.  This case, however, appears to be limited to the context of an auditor's obligation to independently verify financial statements.  *Sterling Nat'l Bank*, 2005 NY Slip. Op. 51850[U], at *4.  Plaintiff cites no authority extending that rule outside of that context.[7]

Plaintiff alternatively contends that his allegation that Defendants had a profit motive is sufficient to plead scienter.  Pl's Mem at 18; *see* Am. Compl. ¶ 38.  However, it is well-settled that general allegations of a profit motive are insufficient for the purpose of pleading fraudulent intent.  *HSH Nordbank AG v. RBS Holdings USA Inc.*, No. 13-CV-3303 (PGG), 2015 WL 1307189, at *7 (S.D.N.Y. Mar. 23, 2015) (quoting *Deutsche Zentral–Genossenchaftsbank AG v. HSBC N. Am. Holdings, Inc.*, No. 12-CV-4025 (AT), 2013 WL 6667601, at *19 (S.D.N.Y. Dec. 17, 2013)).  Plaintiff's sole allegation in this regard is that Defendants made fraudulent representations "in order to induce Plaintiff to invest[,] thereby earning significant fees."  Am.

---

[6] Although the Court's conclusion that the alleged misrepresentations lack particularity technically disposes of Plaintiff's fraud-based claims, in the interest of efficiency with respect to any future amendments of the Complaint, the Court proceeds to discuss the other infirmities alleged by Defendants.

[7] This argument is conceivably a strained version of the contention that the Defendants "knew facts or had access to information suggesting that their public statements were not accurate[,]" thus giving rise to a strong inference of fraudulent intent.  *ECA*, 553 F.3d at 199.  But, such an allegation "must specifically identify the reports or statements containing this [contradictory] information[,]" which Plaintiff fails to do.  *Landesbank Baden-Wurttemberg v. Goldman, Sachs & Co.*, 478 F. App'x 679, 682 (2d Cir. 2012) (citing *Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000)).

Compl. ¶ 38.  This is precisely the type of profit motive that is "common to most" similarly

situated defendants, and is therefore insufficient on its own.  *ECA*, 552 F.3d at 198.

### iv.  *Reasonable Reliance*

Defendants next assert that Plaintiff has failed to plead that he reasonably relied on

Defendants' misrepresentations for two independent reasons.  Their arguments are twofold: first,

that Plaintiff, a sophisticated investor, specifically disclaimed reliance on any statements of

Defendants; and, second, that the PPM sufficiently disclosed the investment's risk and thus

foreclosed any reasonable reliance on alleged misstatements regarding the investment.

"In assessing the reasonableness of a plaintiff's alleged reliance, courts in this Circuit

consider the entire context of the transaction, including factors such as its complexity and

magnitude, the sophistication of the parties, and the content of any agreements between them."

*McBeth v. Porges*, 171 F. Supp. 3d 216, 225 (S.D.N.Y. 2016).  Nonetheless, "a specific

disclaimer in an agreement destroys the allegations in a plaintiff's complaint that the agreement

was executed in reliance upon . . . contrary oral representations."  *Warner Theatre Assocs. Ltd.*

*P'ship v. Metro. Life Ins. Co.*, 149 F.3d 134, 136 (2d Cir. 1998) (quoting *Danann Realty Corp. v.*

*Harris*, 157 N.E.2d 597, 599 (N.Y. 1959)).  But, "if the allegedly misrepresented facts are

peculiarly within the misrepresenting party's knowledge, even a specific disclaimer will not

undermine another party's allegation of reasonable reliance on the misrepresentations."  *Warner*,

149 F.3d at 136 (citing *Yurish v. Sportini*, 507 N.Y.S.2d 234, 235 (N.Y. App. Div. 2d Dep't

1986)).

Here, Plaintiff first disputes whether the agreement was sufficiently specific to disclaim

Defendants' extrinsic representations.  Pl's Mem. at 14.  Plaintiff is mistaken.  In addition to the

disclaimers quoted above, Jefferies specifically disclaimed "liability for any representations

(expressed or implied) contained in, or for any omissions from, this Memorandum *or any other written or oral communications transmitted to the recipient in the course of their evaluation of the Company*." PPM at ii-iii (emphasis added). The PPM also states that "[n]o person, including Jefferies has been authorized to give any information other than that contained in this Memorandum, or to make, any representations in connection with this offering. *If given or made, such other information or representation must not be relied upon . . . .*" *Id.* at ii (emphasis added). In addition, in the Subscription Agreement that Plaintiff executed, Plaintiff indicated that he had "relied only on the information contained in [the PPM] and Management Presentation" and "furnished or made available" by Palmaz at his request. Balber Decl., Ex. B at 3. Plaintiff further agreed that "[n]either Jefferies nor any of its affiliates or any of its representatives . . . makes any representation as to the validity , accuracy, value or genuineness of any information, certificates or documentation delivered . . . in connection with any of the transactions contemplated herein." *Id.* at 10.

Considering that Plaintiff appears to have been at least somewhat sophisticated of an investor when he invested in Palmaz, these disclaimers were seemingly sufficient to disavow his reliance on extrinsic representations. *See McBeth*, 171 F. Supp. 3d at 228 (surveying cases). Plaintiff suggests that a non-reliance clause must always disclaim reliance on the *specific* misrepresentation at issue. Pl's Mem. at 14 (citing, *inter alia*, *Loreley Fin. [Jersey] No. 3 Ltd. v. Citigroup Global Mkts. Inc.*, 987 N.Y.S.2d 299 (N.Y. App. Div. 1st Dep't 2014)). However, overlooking for a moment that Plaintiff has not specifically articulated the misrepresentations at issue for the Court to make a proper assessment, many of Plaintiff's proffered cases involve clauses that failed to disclaim extrinsic representations entirely, or were vague, at best. *See Loreley*, 987 N.Y.S.2d at 304. And, even if Plaintiff's cases stand for the broad proposition for

which Plaintiff cites them, they are contradicted by other recent cases seemingly sanctioning more general disclaimers. *See, e.g.*, *Oseff v. Scotti*, 15 N.Y.S.3d 350, 353 (N.Y. App. Div. 2d Dep't 2015) (holding that disclaimer of reliance on "any matter or thing affecting or relating to this agreement, except as specifically set forth in this agreement" sufficient to bar reliance on oral misrepresentations). As such, the Court concludes that the disclaimer appears to be sufficiently specific to bar reliance on extrinsic statements by Defendants, especially those that are sufficiently related to the content of the PPM, but reserves ruling on this until those statements are more specifically alleged. *See, e.g.*, *Robinson v. Deutsche Bank Tr. Co. Americas*, 572 F. Supp. 2d 319, 324 (S.D.N.Y. 2008) (discussing how a more general merger clause would be more likely to bar reasonable reliance as a matter of law where the subject matter covered by the agreement containing the merger clause is related to the subject of the alleged misrepresentations).

Plaintiff alternatively contends that because certain facts were peculiarly within Defendants' knowledge, he has sufficiently pleaded reasonable reliance. Pl's Mem at 13-16; *see* Am. Compl. ¶ 37 ("Defendants had a duty of disclosure to Plaintiff due to its unique positions of control over and peculiar knowledge of the information necessary for Plaintiff to make its decision to invest in PSI and Defendants' knowledge that Plaintiff would rely on the information Defendants provided."); *see also id.* ¶ 66 ("Due to the special and confidential relationship with Plaintiff and Defendants, Plaintiff relied on Defendants expertise in the area, and Defendants peculiar knowledge of the market and PSI in particular.").

Defendants make no counter-argument other than that Plaintiff's "peculiar knowledge" claim is not credible in light of the risk factor disclosures being sufficient. *See* Defendants' Reply Memorandum of Law in Support of Their Motion to Dismiss the Amended Complaint

("Reply Mem.") at 7 (ECF No. 52). However, this argument simply begs the question. *See, e.g.*, *Universal Inv. Advisory SA v. Bakrie Telecom PTE, Ltd.*, 37 N.Y.S.3d 209 (N.Y. Sup. Ct. 2016), *aff'd as modified*, 62 N.Y.S.3d 1 (N.Y. App. Div. 1st Dep't 2017) (holding that a risk disclosure does not prevent reliance unless disclaimer is sufficiently specific and alleged misrepresentations did not concern facts peculiarly in seller's knowledge).

At this stage, with minimal clarity as to the facts that were misrepresented, it is impossible for the Court to determine, as a matter of law, whether the peculiar knowledge exception is applicable here. Typically, "it is inappropriate to determine [the question of peculiar knowledge] as a matter of law based solely on the allegations in plaintiff's complaint. . ." *P.T. Bank Cent. Asia v. ABN AMRO Bank N.V.*, 754 N.Y.S.2d 245, 252, 378 (N.Y. App. Div. 1st Dep't 2003); *see, e.g.*, *JP Morgan Chase Bank v. Winnick*, 350 F. Supp. 393, 410 (S.D.N.Y. 2004) (suggesting pre-discovery record was insufficient to preclude reliance where Plaintiff alleged peculiar knowledge). Perhaps if the Complaint is amended with a clearer picture of the precise nature of the misrepresentations at issue, Defendants will be able to definitively demonstrate that Plaintiff did have "independent means of ascertaining the truth." *Id.*; *see, e.g.*, *Trugman-Nash, Inc. v. N.Z. Dairy Bd.*, 942 F. Supp. 905, 923 (S.D.N.Y. 1996) (discussing how one goal of particularity requirement is "providing a defendant fair notice of plaintiff's claim, to enable preparation of his defense").

Still, the peculiar knowledge exception applies not only where "the facts allegedly misrepresented literally were within the exclusive knowledge of the defendant, but also where the truth theoretically might have been discovered, though only with extraordinary effort or great difficulty." *Winnick*, 350 F. Supp. 2d at 410 (quoting *DIMON Inc. v. Folium, Inc.*, 48 F. Supp. 2d 359, 368 (S.D.N.Y. 1999)). And, while the sophistication of the parties and any disclaimers

the parties make with regard to their own due diligence are certainly relevant to the

reasonableness of Plaintiff's reliance, the peculiar knowledge exception may nonetheless apply

to even the most sophisticated of parties, even where those parties make strongly-worded

disclaimers. *TIAA Glob. Invs., LLC v. One Astoria Square LLC*, 7 N.Y.S.3d 1, 10-11 (N.Y. App.

Div. 1st Dep't 2015); *see DIMON*, 48 F. Supp. 2d at 368-69. Ultimately, "the fundamental

question is whether the difficulty of conducting a sufficiently intensive review, given the

information otherwise available, was so great that reliance upon the defendants' representations

was reasonable notwithstanding the disclaimer" that is at issue. *Id.* at 369. As such, while the

Court withholds ruling on whether reasonable reliance has been adequately pleaded, it pauses to

note the demanding standard Defendants face at the motion to dismiss stage where, as here, the

peculiar knowledge exception is invoked.[8]

### v. Duty to Disclose

Finally, Defendants maintain that Plaintiff has failed to plead that Defendants had a duty

to disclose material information and failed to do so.

However, as Defendants acknowledge, a duty to disclose may arise where Plaintiff

alleges a fiduciary relationship between the parties. Def's Mem. at 19 (citing *Spencer v. Green*,

842 N.Y.S.2d 445, 446 (N.Y. App. Div. 2d Dep't 2007)). It may also arise where a party is

acting on superior knowledge that is not readily available to the other in connection with a

business transaction and knows that the other is acting on the basis of mistaken knowledge. *Id.*

(citing *TVT Records v. Island Def Jam Music Grp.*, 412 F.3d 82, 91 (2d Cir. 2005)).

---

[8] For the same reasons, it would be premature to address Defendants' argument that the PPM sufficiently disclosed
the risk of Plaintiff's investment. More specific allegations are necessary to test these assertions, although they,
too, may be more appropriately addressed at the summary judgment stage.

Here, for the reasons discussed in the section addressing Plaintiff's breach of fiduciary duty claim that follows, Plaintiff has adequately pleaded a fiduciary relationship between the parties. Moreover, as discussed above, Plaintiff has made claims that Defendants had peculiar knowledge that was undiscoverable to Plaintiff, which may satisfy the second exception as well. Consequently, Plaintiff has adequately pleaded a duty to disclose.

### c. Breach of Fiduciary Duty

Under New York law, the elements of a claim for breach of fiduciary duty are "breach by a fiduciary of a duty owed to plaintiff; defendant's knowing participation in the breach; and damages." *MLSMK Inv. Co. v. JPMorgan Chase & Co.*, 431 F. App'x 17, 19 (2d Cir. 2011).[9] To state a claim for breach of fiduciary duty, the plaintiff must allege a "special relationship" that "transcends an ordinary business relationship." *PetEdge, Inc. v. Garg*, 234 F. Supp. 3d 477, 500 (S.D.N.Y. 2017).

"[T]here is no general fiduciary duty inherent in an ordinary broker/customer relationship" under New York law. *Indep. Order of Foresters v. Donald, Lufkin & Jenrette, Inc.*, 157 F.3d 933, 940 (2d Cir. 1998) (citing *Perl v. Smith Barney Inc.*, 646 N.Y.S.2d 678, 680 (N.Y. App. Div. 1st Dep't 1996)). Typically, where a customer has a non-discretionary account (*i.e.*, where the broker has no independent authority), a broker's fiduciary duty is "limited" to "the completion of the transaction." *Bissell v. Merrill Lynch & Co.*, 937 F. Supp. 237, 246 (S.D.N.Y. 1996), *aff'd*, 157 F.3d 138 (2d Cir. 1998). But, an investment advisor can, under certain circumstances, be considered a fiduciary under New York law. *See, e.g., Am. Tissue, Inc. v.*

---

[9] The Court's conclusions with respect to Plaintiff's fraud claims do not foreclose the possibility that Plaintiff has adequately pleaded a breach of fiduciary duty claim, even if it arises from the same or substantially similar conduct. *See Official Comm. of Unsecured Creditors v. Donaldson, Lufkin & Jenrette Sec. Corp.*, No. 00-CV-8688 (WHP), 2002 WL 362794, at *8 (S.D.N.Y. Mar. 6, 2002) (discussing the varying pleading requirements of the two claims).

*Donaldson, Lufkin & Jenrette Sec. Corp.*, 351 F. Supp. 2d 79, 102 (S.D.N.Y. 2004) (collecting cases); *Official Comm.*, 2002 WL 362794, at *9 (same).

Ultimately, irrespective of formal titles attributed to the parties involved, the existence and scope of a fiduciary relationship "depends on the factual nature of the relationship [between them]." *Salomon Bros., Inc. v. Huitong Int'l Tr. & Inv. Corp.*, No. 94-CV-8559 (LAP), 1996 WL 675795, at *2 (S.D.N.Y. Nov. 21, 1996). This is "a factual determination" that is typically "not susceptible to determination on a motion to dismiss." *Id.* New York deploys a "flexible" definition, defining a fiduciary relationship as "one founded upon trust or confidence reposed by one person in the integrity and fidelity of another." *Am. Tissue*, 351 F. Supp. 2d at 102 (quoting *Penato v. George*, 383 N.Y.S.2d 900, 904-05 (N.Y. App. Div. 2d Dep't 1976)). "Such a relationship might be found to exist, in appropriate circumstances, between close friends . . . or even where confidence is based upon prior business dealings." *Holmes v. Lorch*, 329 F. Supp. 2d 516, 526 (S.D.N.Y. 2004) (quoting *Penato*, 383 N.Y.S.2d at 904-05).

Under this standard, the Court cannot conclude at this stage, as a matter of law, that the parties lacked a fiduciary relationship. Plaintiff specifically alleges that Defendant Ostrove was Plaintiff's *advisor* and broker during the course of their relationship, dating back to 2006, and that Plaintiff became accustomed to relying on Ostrove's advice. Am. Compl. ¶ 10. Plaintiff also claims that Ostrove continued to "represent" him and give him advice throughout his investment in Palmaz. *Id.* ¶ 23. In other words, the parties had extensive dealings and Ostrove served as more than a mere broker to Plaintiff.

These allegations, taken as true, are sufficient for discovery to proceed to develop a record as to the scope of the parties' relationship. The Court accordingly declines to dismiss this cause of action. *See, e.g.*, *Lau v. Mezei*, No. 10-CV-4838 (KMW), 2012 WL 3553092, at *11

(S.D.N.Y. Aug. 16, 2012) (declining to grant summary judgment to defendants on fiduciary duty claim because special relationship could be inferred from advisor-client relationship based on level of contact, whether advice was solicited directly, and the extent to which advisor knew of advice given) (citing *Mandarin Trading Ltd. v. Wildenstein*, 944 N.E.2d 1104, 1109 (N.Y. 2011)).

### d. Negligent Misrepresentation

Relying on their arguments for dismissal of Plaintiff's fraud and breach of fiduciary duty claims, Defendants argue Plaintiff's negligent misrepresentation claim must fail because Defendants had no duty to impart correct information to Plaintiff, that Plaintiff has failed to plead the misinformation given to him with sufficient particularity, and that Plaintiff could not have reasonably relied on that information.

To prevail on a negligent misrepresentation claim under New York law, Plaintiff must demonstrate "(1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information." *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 490 (2d Cir. 2014) (quoting *J.A.O. Acquisition Corp. v. Stavitsky*, 863 N.E.2d 585 (N.Y. 2007)). A negligent misrepresentation claim "must comply with the particularity requirement of Rule 9(b)." *In re Lesli Fay Coms., Inc. Sec. Litig.*, 918 F. Supp. 749, 766 (S.D.N.Y. 1996).

Having already concluded that Plaintiff has sufficiently alleged a fiduciary duty, it follows that Plaintiff has sufficiently pleaded the "special relationship" required for a negligent misrepresentation claim. *Valentini v. Citigroup, Inc.*, 837 F. Supp. 2d 304, 329 (S.D.N.Y. 2011) (citing *Stewart v. Jackson & Nash*, 976 F.2d 86, 90 (2d Cir. 1992)).

Despite that, for many of the same reasons that Plaintiff's fraud claims are deficiently pleaded, Plaintiff's negligent representation claim fails in its current form. At the least, for the reasons discussed above, Plaintiff has failed to adequately plead Defendants' misrepresentations with the requisite particularity. And, for the reasons discussed above, Plaintiff's reliance may also be assailable in a future pleading.

Accordingly, Defendants' motion to dismiss Plaintiff's negligent misrepresentation claim is granted without prejudice to amend.

### e. *Professional Negligence*

A professional negligence claim under New York law includes all of the elements of negligence and "that the breach of duty was by a professional in a departure from accepted standards of practice." *2002 Lawrence R. Buchalter Alaska Tr. v. Phila. Fin. Life Assur. Co.*, 96 F. Supp. 3d 182, 228 (S.D.N.Y. 2015) (citation omitted). This, of course, includes a duty to the plaintiff; a breach of duty; a reasonably close causal connection between the contact and the resulting injury; and actual loss, harm or damage. *Cromer Fin. Ltd. v. Berger*, 137 F. Supp. 2d 452, 495 (S.D.N.Y. 2001).

Defendants argue that Plaintiff's professional negligence claim should be dismissed because brokers owe their customers no duty of care beyond the execution of transactions. However, as discussed above, Plaintiff alleges that Ostrove served as his advisor dating back to 2006. This allegation, taken as true, is sufficient to establish a duty of care at this stage. Defendants' motion to dismiss this cause of action is denied.

## IV.     CONCLUSION

For the reasons described above, Defendants' Motion to Dismiss the Amended Complaint is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's common-law fraud, fraudulent concealment, and negligent misrepresentation claims are **DISMISSED** without prejudice, with leave given to replead within thirty days. The motion to dismiss Plaintiff's breach of fiduciary duty and professional negligence claims is **DENIED**. The Clerk of Court is respectfully directed to close the Defendants' motions (ECF Nos. 42 & 48).

**SO ORDERED.**

**Dated:  February 15, 2018**
           **New York, New York**

ANDREW L. CARTER, JR.
**United States District Judge**

29