## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | | |
|---|---|---|
| ROBERT TANNENBAUM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.: 8:18-cv-00487-EAK-CPT |
| v. | ) | |
| | ) | |
| JEFFERIES, LLC, | ) | **DISPOSITIVE MOTION** |
| | ) | |
| Defendant. | ) | |
| | ) | |

### DEFENDANT JEFFERIES LLC'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND INCORPORATED MEMORANDUM OF LAW

Defendant Jefferies LLC, incorrectly sued as "Jefferies, LLC" ("Jefferies"), respectfully moves to dismiss the complaint (ECF No. 1, "Compl.") of Plaintiff Robert Tannenbaum ("Plaintiff") pursuant to Federal Rule of Civil Procedure 12(b)(6).

### I.    PRELIMINARY STATEMENT

Plaintiff is an experienced and sophisticated investor who has worked in the financial services industry for almost a decade as a licensed securities broker and investment advisor. In 2012, Plaintiff made the decision to invest in a private placement offering by Palmaz Scientific, Inc. ("Palmaz"), a fledgling and unproven biotechnology start-up company.  Upon warranting in writing that he had conducted the necessary due diligence into this speculative venture and that he understood the manifold risks he was about to assume, Plaintiff subscribed to purchase $250,000 worth of Palmaz preferred stock.  Unfortunately, to the disappointment of Plaintiff, Palmaz struggled financially and filed for bankruptcy in March 2016.

1

Now, by this action, Plaintiff aims to shift onto Jefferies the consequences of his own voluntary and fully informed investment decision.  Casting himself as a wide-eyed naïf—a pretense belied by the public record and his own allegations—Plaintiff claims, despite his self-warranted financial sophistication, that he made his speculative and high-risk Palmaz investment solely in reliance on a handful of alleged generically optimistic statements made by his Jefferies account executive who had absolutely no discretionary authority over Plaintiff's account or his investment decisions.  Asserting untimely claims for fraudulent and negligent misrepresentation, Plaintiff seeks to hold Jefferies liable, as an insurance policy, for the full amount of his lost investment.  Plaintiff's claims must be dismissed because:

*First*, as a threshold matter, Plaintiff's claims are clearly time-barred on their face.  Plaintiff executed the Subscription Agreement memorializing his investment on January 12, 2012.  The four-year statute of limitations began to run, at the latest, on that date.  However, Plaintiff did not file suit until February 28, 2018, more than six years after the accrual of his claims.  The Florida delayed-discovery rule does not apply in this case because all of the alleged facts giving rise to Plaintiffs' claims were inherently discoverable at the time of his investment by the exercise of due diligence—such diligence that Plaintiff himself warranted in writing that he had conducted.  Therefore, all of Plaintiff's claims are time-barred by at least two years.

*Second*, by signing the Subscription Agreement, Plaintiff contractually-disclaimed reliance on any representation by Jefferies and expressly warranted that he based his investment decision entirely on his own thorough due diligence.  The Subscription Agreement therefore legally precludes Plaintiff from establishing reliance on any statement

by Jefferies, a requisite element of his claims.  Furthermore, Plaintiff fails also to allege any material misstatement of fact by Jefferies—as opposed to non-actionable puffery—or that Jefferies knew of the falsity of any of its generic statements about Palmaz.  In any event, Plaintiff fails to allege with particularity the dates of the purported misrepresentations and omissions, and thus falls short of the applicable Rule 9(b) pleading standard.

*Finally*, Plaintiff cannot state a claim against Jefferies based on any omission of material fact because Jefferies did not owe any duty of disclosure to Plaintiff.  Under Florida law, a duty to disclose arises only in a fiduciary-like relationship.  In this case, Plaintiff does not even allege any fiduciary relationship because he simply cannot:  the parties did not agree to a fiduciary relationship and Plaintiff is not a trusting, weaker party who could theoretically have the protection of a fiduciary duty as a matter of law.

## II.   STATEMENT OF FACTS

### 1.   The Parties

Plaintiff, a resident of Florida, by his own admission is a "successful entrepreneur, a licensed investment advisor, and a careful investor."  (Compl. ¶ 2.)  According to his FINRA BrokerCheck profile, Plaintiff has nine years of experience as a licensed broker working for leading financial services firms.  (*See generally* Declaration of Scott S. Balber, dated April 23, 2018, Exhibit ("Ex.") A.)  BrokerCheck is a publicly available internet database maintained by FINRA, the financial industry self-regulatory organization, containing information about member brokers.  *Buscetto v. Fin. Indus. Reg. Auth.*, 2012 WL 1623874, at *3 (D.N.J. May 9, 2012).  The Court may consider Plaintiff's BrokerCheck report as a public record subject to judicial notice.  *Wilson v. Bodnar*, 750 F. Supp. 2d 186, 188 n.5 (D. Me.

2010) (taking judicial notice of a BrokerCheck report on a motion to dismiss); *see also Horne v. Potter*, 392 F. Appx. 800, 802 (11th Cir. 2010) (courts may properly take judicial notice of the contents of public records). Plaintiff's current employer publicly advertises his services by noting his "experience" as a financial advisor "qualified to help provide highly personalized wealth management services."[1] (Ex. B at 1.) Plaintiff is a former client of Jefferies.

Jefferies is a New York-based global investment bank and institutional securities firm. (*See* Compl. ¶¶ 4, 6.) Beginning in or around 2010, Jefferies acted for a short time as a placement agent in connection with a private placement of Palmaz Series B convertible preferred stock. In or around 2011, Plaintiff's account executive at Jefferies notified Plaintiff of an opportunity to invest in the private placement. (*Id.* ¶ 8.)

## 2. The Private Placement Memorandum ("PPM")

Plaintiff alleges that he "reviewed" a Palmaz Private Placement Memorandum ("PPM") provided to him by Jefferies.[2] (*Id.*; *see generally* Ex. C.) Plaintiff notably fails to mention that the PPM explicitly cautioned prospective investors of the numerous risks associated with the purchase of Series B shares:

---

[1] Courts considering Rule 12(b)(6) motions to dismiss may take judicial notice of corporate websites. *See e.g. Florida Evergreen Foliage v. E.I. Dupont De Nemours and Co.*, 336 F. Supp. 2d 1239, 1261 n.21 (S.D. Fla. 2004) (taking judicial notice of statements contained on a corporate website to confirm the identity of a former CEO); *see also Doron Precision Systems, Inc. v. FAAC, Inc.*, 423 F. Supp. 2d 173, 179 n.8 (S.D.N.Y. 2006) ("For purposes of a 12(b)(6) motion to dismiss, a court may take judicial notice of information publicly announced on a party's website, as long as the website's authenticity is not in dispute and it is capable of accurate and ready determination.").

[2] Because the PPM is incorporated by reference in Plaintiff's Complaint (*see* Compl. ¶¶ 8, 9, 17) it may be considered by the Court when deciding this Motion to Dismiss. *See Alfonso v. Res. Centers, LLC*, 2014 WL 4674057, at *2 n.1 (M.D. Fla. Sept. 18, 2014).

> An investment in the securities described in this Memorandum is speculative and involves a high degree of risk. Investors should understand that they will be required to bear the financial risk of any investment in these Securities for an indefinite period of time. Only investors who can bear the risk of loss of their entire investment in the securities offered hereby should invest.

(Ex. C at iii.)  In fact, the PPM devoted nine pages to detailed descriptions of over two dozen "Risk Factors" facing Palmaz, any one of which could lead investors to "lose all or part of [their] investment." (*See id.* at 30–38.)  The PPM's Risk Factors disclosed that Palmaz was a "recently organized entity with a limited history of operations or earnings and limited experience operating a stand-alone business" and that there was "no assurance that the operations of the Company will be profitable or that any investment in the shares will be recouped." (*Id*. at 30.)  According to the PPM, the success of the company would depend on "successful commercialization of [its] technology" but such successful "product development in [the biotechnology] industry is highly uncertain and very few research and development projects produce a commercial product." (*Id*. at 31.)  The PPM also explicitly warned that the Series B shares were unregistered with the SEC and lacked a public market. (*Id*. at 30.)  Finally, through the PPM, Palmaz specifically warned potential investors that the value of the Series B shares were subject to "substantial dilution" and that the company expected to incur losses for the "foreseeable future" and would "require substantial amounts of additional financing in order to satisfy [its] capital requirements." (*Id*.)

### 3. Jefferies' Alleged Pre-Investment Representations

After reviewing the PPM and its extensive risk disclosures, Plaintiff concluded that the Series B investment "looked interesting but risky." (Compl. ¶ 8.)  Although he initially

"decided to pass" on Palmaz, Plaintiff alleges that he "chang[ed] his mind" following two telephone calls with his Jefferies' account executive.  (*Id.* ¶¶ 8, 25.)  Plaintiff alleges that he received a call from his Jefferies account executive on an unspecified date in October 2011 (the "October 2011 Call").  (*Id.* ¶¶ 8–11.)  Plaintiff complains of the following alleged representations in the October 2011 Call:  (i) Julio Palmaz, the company's founder, was a "genius"; (ii) Ostrove was personally invested in Palmaz because it was as a "well-run entity"; and (iii) Palmaz created and owned a new stent that "doesn't get rejected" by the heart.  (*Id.* ¶ 9.)

Plaintiff alleges that, in a subsequent call from Ostrove on an unspecified date in December 2011 (the "December 2011 Call"), Jefferies further represented that:  (i) Johnson & Johnson "[had] a piece of the deal," and was looking to increase its existing $9 million investment in Palmaz; (ii) the CEO of Palmaz, was a "brilliant businessman"  for whom Jefferies personally vouched; and (iii) Palmaz's patents were "unusually valuable" and would "yield a substantial rate of return on Plaintiff's potential investment sooner rather than later." (*Id.* ¶ 12.)

Plaintiff alleges that he declined to invest in Palmaz after the October 2011 Call but changed his mind following the December 2011 Call.  (*Id.* ¶¶ 11, 14.)

### 4.  Plaintiff's Subscription Agreement

By Subscription Agreement dated January 26, 2012,[3] Plaintiff agreed to purchase

---

[3]  Although Plaintiff dated the Subscription Agreement incorrectly as January 26, <u>2011</u> (Ex. D at 13), it is undisputed between the parties that Plaintiff's Palmaz investment occurred in 2012.  (Compl. ¶ 14.)

1000 Palmaz Series B shares at a purchase price of $250.00 per share.[4]  (*Id.* ¶ 14; *see generally* Ex. D.)  By agreeing to the "Subscriber Representations, Warranties and Covenants" section of the Subscription Agreement, Plaintiff expressly represented and warranted that:

- He was aware that the Series B shares "involve a high degree of risk of loss by [Plaintiff] of [his] entire investment" and that he "must bear such economic risk for an indefinite period of time."  (Ex. D at 3.)

- He had read "carefully the Risk Factors included in the [PPM]."  (*Id.*)

- He possessed the "knowledge and experience in financial and business matters necessary to evaluate the investment in [Palmaz]" and had "carefully reviewed and underst[ood] the risks (including without limitation the Risk Factors included in the [PPM]) of, and other considerations relating to, the purchase of [the Series B shares]." (*Id.*)

- He had been furnished with "all information that [he] deemed necessary or appropriate in order to form a decision" concerning the investment.  (*Id.*)

- He had relied "only on the information contained in the [PPM] and Management Presentation" and information provided to him by Palmaz at his request.  (*Id.*)

- He had "adequate means of providing for current and anticipated financial needs and contingencies" and was "able to bear the economic risk for an indefinite period of time and has no need for liquidity of the investment in the Securities and

---

[4]  The Subscription Agreement is incorporated by reference in the Complaint and thus may also be considered by the Court in deciding this Motion to Dismiss.  *Alfonso*, 2014 WL 4674057, at *2.  (*See* Compl. ¶¶ 2, 14.)

could afford complete loss of such investment."  (*Id*.)

Finally, in a section entitled "Exculpation of Jefferies," Plaintiff agreed that "neither Jefferies nor . . . any of its representatives . . . makes any representation or warranty or has any responsibilities as to the validity, accuracy . . . or genuineness of any information [or] documentation delivered by or on behalf of [Palmaz]."[5]  (*Id*. at 10.)

### 5.  Jefferies' Alleged Post-Investment Representations

Plaintiff alleges that he continued to discuss Palmaz periodically with his Jefferies account executive following his 2012 investment.  (*See* Compl. ¶¶ 15–21.)  Plaintiff alleges that "in or around October 2012" he spoke by telephone with his account executive regarding his Palmaz investment (the "October 2012 Call").  (*Id*. ¶ 16.)  Plaintiff alleges that Ostrove represented that:  (i) Palmaz's financial and commercial prospects were "strong"; (ii) the company's CEO was "working on new deals" for Palmaz; and (iii) while Palmaz's designs had not yet been subjected to trials and studies, they were expected to be "very successful." (*Id*.)

Plaintiff further alleges that during a series of telephone discussions with Ostrove on unspecified dates between 2013 through 2015 Ostrove represented that Julio Palmaz and his family "were so confident that they were injecting their own money in the Company" (which Palmaz itself confirmed in August 2015) and that the departure of Palmaz CEO Steve Solomon was the result of certain personal matters.  (*Id*.)

After Palmaz filed for bankruptcy protection, Plaintiff alleges that, on April 12 and

---

[5]  Although Plaintiff does not allege that he relied on the PPM, it should be noted that the United States District Court for the Southern District of New York has held that the statements made in the PPM are not attributable to Jefferies.  (*See* Ex. E at 13–15.)

13, 2016, he spoke with Ostrove on speakerphone, in the presence of an "esteemed, retired FBI Special Agent-in Charge." (the "April 2016 Call") (*Id.* ¶ 19.)   Plaintiff alleges that, during the April 2016 Call Ostrove stated that:  (i) he did not know "the real story" concerning Palmaz; (ii) Palmaz CEO Steve Solomon, whom Ostrove had met on several occasions, had made a favorable impression on him and "seemed always on his game"; (iii) he had purportedly been aware of unspecified "questions" about Palmaz; (iv) Plaintiff's stock had residual value because "Mrs. Palmaz is going to buy the patents"; (v) the company failed in part because it could not "crack" the European market, a failure attributable to changes in the "exchange rate."  (*Id.* ¶¶ 19–20.)

Plaintiff filed this Complaint on February 28, 2018, more than six years after he made the decision to invest in Palmaz—notwithstanding the four-year statute of limitations applicable to his asserted claims for fraudulent misrepresentation and negligent misrepresentation.

### III.  <u>LEGAL STANDARD</u>

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure "attack[s] the legal sufficiency of a complaint."  *Whiteeagle v. 185 Clearwater, LLC*, 2013 WL 12170285, at *2 (M.D. Fla. Feb. 4, 2013).  When ruling on a Rule 12(b)(6) motion to dismiss, "the court must accept the facts pleaded as true and construe them in a light most favorable to the plaintiff."  *Id.*  However, "[a] plaintiff does not state a claim for relief by offering mere labels and conclusions, formulaic recitations of the elements of a cause of action, or naked assertions devoid of further factual enhancement."  *Kinsey v. MLH Fin. Servs., Inc.*, 509 F. App'x 852, 853 (11th Cir. 2013).  Instead, a complaint "must contain

sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" in order to survive a motion to dismiss.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## IV.   ARGUMENT

### 1.   Plaintiff's Claims Are Clearly Time-Barred.

Dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) is appropriate when, as here, it is "apparent from the face of the complaint" that the claims asserted are barred by statute of limitations.  *Brotherhood of Locomotive Engineers & Trainmen Gen. Comm. Of Adjustment CSX Transp. N. Lines v. CSX Transp., Inc.*, 522 F.3d 1190, 1194 (11th Cir. 2008).  Plaintiff's claims are each subject to a four-year statute of limitations.  Since he brought this case *six* years after his Palmaz investment, Plaintiff's claims should be dismissed as untimely.

### A.   The Applicable Four-Year Statute of Limitations Expired in 2016.

Plaintiff's fraudulent and negligent misrepresentation claims are subject to a limitations period of four years running from the accrual of each claim.  *See* Fla. Stat. § 95.11(3)(j); *see also Mayor's Jewelers, Inc. v. Meyrowitz*, 2012 WL 2344609, at *4 (S.D. Fla. June 20, 2012).  Under Florida law, a claim accrues when the "when the last element constituting the cause of action occurs."  Fla. Stat. § 95.031(a).

The crux of Plaintiff's Complaint is that he made his Palmaz investment in reliance on purported misrepresentations by Jefferies.  (*See* Compl. ¶ 14.)  Thus, as alleged, Plaintiff's claims could have accrued no later than the date that he executed the Subscription Agreement committing him to the investment:  January 26, 2012.  *See Bedtow Grp. II, LLC v. Ungerleider*, 684 F. App'x 839, 842 (11th Cir. 2017) (statute of limitations began to run at

latest on date plaintiff "made payment and obtained ownership" of life insurance policies allegedly procured by fraudulent misrepresentations); *Freeman v. Bianco*, 2003 WL 179777, at *4 (S.D.N.Y. Jan. 24, 2003) (Florida statute of limitations for fraud began to run on the dates plaintiff signed agreements allegedly induced by fraudulent representations). Accordingly, the applicable four-year limitations period expired—at the latest—on January 26, 2016, *<u>more than **two years**</u>* before Plaintiff filed his Complaint.  It is therefore clear on the face of the Complaint that Plaintiff's claims are untimely and should be dismissed accordingly.[6]

B.  The Florida "Delayed Discovery Rule" Does Not Redeem Plaintiff's Untimely Claims.

Under Florida's "delayed discovery rule," the accrual of fraud-based claims—and the commencement of the four-year limitations period—may be postponed until "the facts giving rise to the cause of action were discovered or should have been discovered with the exercise of due diligence." *Bedtow Grp. II, LLC*, 684 F. App'x at 841.  Here, because Plaintiff "should have . . . discovered with the exercise of due diligence" the alleged misrepresentations and omissions "before [he] purchased the [securities], Florida's delayed discovery rule does not act to postpone the accrual of [his] causes of action." *Id*. at 842 affirming dismissal of time-barred claims).

Moreover, Plaintiff cannot avail himself of the delayed discovery rule because he

---

[6]  While Plaintiff claims that he "discovered" the "vast majority" of the alleged misrepresentations and omissions in 2017 (Compl. ¶ 21), this contention is demonstrably false.   By letter dated June 16, 2016, Plaintiff made a settlement demand which raised the same issues set forth in the Complaint.  (*See generally* Ex. F.)  Plaintiff has not explained why he waited more than eighteen months to file the Complaint.

does not even attempt to explain how his own due diligence failed to reveal the alleged fraud. Nor could he, in light of his representation in the Subscription Agreement that he reviewed the PPM in the course of his own fully informed investigation of Palmaz before his January 2012 investment.  (*See* Ex. D at 3.)  As explained above, the Palmaz PPM listed several highly detailed "risk factors" surrounding the company and the private placement.  In sharp contrast to the unalloyed optimism Plaintiff now attributes to Jefferies employee Ostrove, the Palmaz PPM extensively described dozens of threats and obstacles facing the company.  (Ex. C at 30–38.)  Those explicit risk disclosures, coupled with the abundant warnings found in the Subscription Agreement and elsewhere in the PPM, gave Plaintiff ample notice of the highly speculative nature of his investment and revealed the falsity of any alleged endorsements of Palmaz's financial and commercial viability.   Because Plaintiff's self-warranted due diligence would have uncovered all of "the facts giving rise to the cause[s] of action" in his Complaint, the delayed discovery rule does not apply and all of the claims are time-barred.  *See Armbrister v. Roland Int'l Corp.*, 667 F. Supp. 802, 811–21 (M.D. Fla. 1987) (Kovachevich, J.) (delayed discovery rule did not apply to untimely fraud claims where oral representations were contradicted by statements in contemporaneous offering materials and sales agreements).

## 2. The Complaint Fails to State a Claim for Fraudulent Misrepresentation or Negligent Misrepresentation.

To state a claim for fraudulent misrepresentation under Florida law, a Plaintiff must allege:  (i) a false statement concerning a material fact; (ii) the representor's knowledge that the representation is false; (iii) an intention that the representation induce another to act on it; and (iv) consequent injury by the party acting in reliance on the representation.  *Butler v.*

*Yusem*, 44 So. 3d 102, 105 (Fla. 2010).  Under Florida law, negligent misrepresentation requires:  (i) a misrepresentation of material fact; (ii) that the representor either knew or should have known the statement was false or made without knowledge of truth or falsity; (iii) the intention that the representation induce another to act on it; and (iv) resulting injury to a party acting in justifiable reliance on the misrepresentation.  *Total Containment Sys., Inc. v. Glacier Energy Servs., Inc.*, 2016 WL 729565, at *2 (M.D. Fla. Feb. 24, 2016).

  For the reasons set forth below, the Complaint does not adequately allege the requisite elements of these claims and therefore, fails to state a claim for either cause of action.

  A. <u>Plaintiffs' Claims Do Not Meet the Heightened Pleading Standard of Rule 9(b).</u>

  Plaintiff's fraudulent and negligent misrepresentation claims are subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b).  *Twinstar Partners, LLC v. Diamond Aircraft Indus., Inc.*, 2013 WL 3288560, at *3 (S.D. Fla. June 28, 2013). To meet that heightened standard, for each allegedly negligent or fraudulent misrepresentation, Plaintiff must plead the time, place, and person responsible for each misrepresentation, the manner in which each misrepresentation misled the plaintiff and what the defendant gained from the alleged fraud.  *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010).

  Plaintiff's Complaint completely fails to meet this heightened pleading standard because it does not allege the specific dates of the misrepresentations with the requisite particularity and only narrows them to certain individual months.  The law is clear that this low level of particularity is not sufficient.  *See MidAmerica C2L, Inc. v. Siemens Energy, Inc.*, 2017 WL 1322327, at *4 (M.D. Fla. Apr. 7, 2017) ("Plaintiffs' claim in Count III that

the misrepresentation occurred at some point in July 2015 is not enough to placate Rule

9(b).").  Worse still is Plaintiff's allegation of "multiple telephone conversations that took

place in 2012, 2013, 2014, 2015, and 2016" (Compl. ¶ 28), which falls woefully short of the

temporal particularity demanded by Rule 9(b).  *See S. Pan Servs. Co. v. S.B. Ballard Const.

Co.*, 2008 WL 3200236, at *5 (M.D. Fla. Aug.6, 2008) (fraud claims did not satisfy Rule 9(b)

where only a "very general time frame" was alleged).  As a threshold issue, Plaintiff fails to

plead any of his claims with the requisite particularity and therefore dismissal is warranted.

    B.  <u>The Complaint Does Not Allege an Actionable Misstatement of Material Fact</u>.

        A claim for negligent misrepresentation is similar to a claim for fraudulent

misrepresentation "insofar as both claims require the aggrieved party to allege that the

defendant made a statement of *<u>material fact</u>*."  *Azar v. Am. Home Mortg. Servicing, Inc.*,

2010 WL 5648880, at *4 (M.D. Fla. July 16, 2010) (emphasis added).  A fact is material

under Florida law if, but for its alleged misrepresentation, "the complaining party would not

have entered into the transaction."  *Atl. Nat'l Bank of Fla. v. Vest*, 480 So. 2d 1328, 1332

(Fla. 2d DCA 1985).

        The alleged representations attributed to Jefferies are not material as a matter of law,

because they comprise at best non-actionable statements of opinion or promises of future

actions.  *See Smith v. Bank of Am., N.A.*, 2014 WL 897032, at *6 (M.D. Fla. Mar. 6, 2014)

("Generally, a false statement concerning a material fact is only actionable if it is based on a

past or existing fact, not a statement of opinion or promise of future action.") (collecting

cases).  Indeed, the statements alleged in the Complaint amount to no more than vague

puffery, which under well-settled precedent cannot constitute an actionable

misrepresentation. *MDVIP, Inc. v. Beber*, 222 So. 3d 555, 561 (Fla. 4th DCA 2017) ("Puffing" statements, such as a "promise to deliver an 'exceptional' product or service[,] [are] matter[s] of opinion rather than fact, and constitute[] non-actionable puffery."); *Silver v. Countrywide Home Loans, Inc.*, 760 F. Supp. 2d 1330, 1342 (S.D. Fla. 2011), *aff'd*, 483 F. App'x 568 (11th Cir. 2012) ("Puffing is not to be taken seriously, is not to be relied upon, and is not binding as a legal obligation or promise."). As explained below, Plaintiff alleges only vague pronouncements of confidence and unsubstantiated predictions of future returns—the very sort of statements Florida courts routinely reject as non-material. *See*, *e.g.*, *Silver v. Countrywide Home Loans, Inc.*, 760 F. Supp. 2d 1330, 1343 (S.D. Fla. 2011) ("These are clearly statements of opinion and projections about future events, and as such do not constitute statements of existing material fact, which is a prerequisite for actionable fraud.").

Plaintiff cannot adequately plead an actionable misrepresentation by citing Ostrove's alleged statements of opinion about Palmaz (e.g. that it was "well-run entity," that its founder was a "genius," or that its commercial prospects were "strong"). (Compl. ¶¶ 9, 16.) These allegations are the epitome of non-material puffery and are mere opinion-based statements which do not give rise to any cause of action. *See, e.g.*, *Wasser v. Sasoni*, 652 So. 2d 411, 412 (Fla. 3d DCA 1995) (finding a seller's representations that a building was "a very good building" and "an excellent deal" were "clearly statements of opinion" and not actionable).

Nor can Plaintiff base a claim for fraudulent or negligent misrepresentation on alleged statements that Palmaz's patents were "unusually valuable" and would "yield a substantial rate of return" on Plaintiff's investment. (Compl. ¶ 12.) Those purported representations are inadequate because, following longstanding precedent, financial projections are "considered

non-actionable puffing promises of future action." *Hercules Capital, Inc. v. Gittleman*, 2018 WL 395489, at \*21 (S.D. Fla. Jan. 12, 2018) (citing *Royal Typewriter Co. v. Xerographic Supplies Corp.*, 719 F.2d 1092, 1103 (11th Cir. 1983).  "That is particularly the case with new technology companies.  With no history of earnings, financial forecasts are inherently speculative; little more than guesswork." *Hercules Capital,* 2018 WL 395489, at \*23.

In sum, Plaintiff's failure to allege an actionable misstatement of material fact is an insuperable pleading defect which compels dismissal of his claims.

C. The Complaint Does Not Adequately Allege that Jefferies Knew That the Alleged Misrepresentations Were False.

In order to plead fraudulent or negligent misrepresentation, Plaintiff must allege that the representor knew, or reasonably should have known of the statement's falsity.  *Band v. Ginn Companies, LLC*, 2010 WL 11515174, at \*7 (M.D. Fla. Sept. 30, 2010).  Plaintiff's Complaint utterly fails to satisfy this essential element as Plaintiff does not plausibly allege that Jefferies knew or should have known of the falsity of any alleged misrepresentation.

Plaintiff only summarily alleges that Jefferies "either knew [a] statement was false when it made it" or made the statement "without knowledge of its truth or falsity."  (Compl. ¶¶ 24, 29.)  Courts have routinely held that these bare and conclusory assertions are not sufficient to plead a negligent or fraudulent misrepresentation claims.  *See*, *e.g.*, *Kling v. Jon Bourbeau, P.A.*, 2016 WL 8730199, at \*4 (S.D. Fla. Apr. 25, 2016) (dismissal warranted where Defendant failed to plead with particularity that Plaintiff "made the misrepresentation without knowledge as to its truth or falsity or under circumstances in which he ought to have known of its falsity"); *Zarrella v. Pac. Life Ins. Co.*, 755 F. Supp. 2d 1218, 1223 (S.D. Fla. 2010) (dismissing fraud claim where plaintiff failed to allege "what information [defendant]

16

had or could have had in its possession to indicate that the statements were false when made").  Rather, to avoid dismissal, Plaintiff must actually "allege *how* or *why* Defendant knew or should have known the information was false." *Jackson v. Ocwen Loan Servicing, LLC*, 2011 WL 4345449, at *5 (S.D. Fla. Sept. 16, 2011) (dismissing misrepresentation-based claims for failure to adequately allege defendant's knowledge of representation's purported falsity) (emphasis added).

Plaintiff's cursory allegations of Jefferies' "unique and superior knowledge" are facially implausible in light of Plaintiff's representations in the Subscription Agreement that he possessed the expertise to investigate speculative private offerings, had been provided with "all information that [he] deemed necessary or appropriate in order to form a decision" concerning the investment, and had conducted a full and thorough inquiry into Palmaz. (Compl. ¶¶ 17, 37, 42;  Ex. D at 3.)  Indeed, tellingly, Plaintiff does not allege a single fact or statement explaining what Jefferies allegedly knew regarding Palmaz that he failed to uncover himself during his due diligence into the company.  Because Plaintiff fails to plausibly allege Jefferies' knowledge of any statements' falsity, his claims must be dismissed.

   D.  <u>The Complaint Does Not Adequately Allege Plaintiffs' Reliance on the Alleged Misrepresentations</u>.

To state a claim for fraudulent or negligent misrepresentation, a plaintiff must allege that he relied on the defendant's alleged misrepresentation.  *See Foreline Sec. Corp. v. Scott*, 871 So. 2d 906, 910 (Fla. 5th DCA 2004) (noting that fraudulent and negligent misrepresentations claims require reliance).  To state a claim for negligent misrepresentation, the plaintiff's reliance must also be "justifiable." *Total Containment Sys., Inc.*, 2016 WL 729565, at *2.  Because Plaintiff has not plausibly alleged reliance—much less *justified*

reliance—on any misrepresentation attributable to Jefferies, his claims must fail.

    i. _All Reliance Is Precluded by the Subscription Agreement That Plaintiff Executed._

By signing the Subscription Agreement, Plaintiff stated that he:  (i) was capable of independently evaluating the Palmaz investment, (ii) had performed his own due diligence before deciding whether to invest, (iii) "relied only" on information provided to him by Palmaz; (iv) had been provided "all information" that he deemed "necessary" to reach his investment decision, and (iv) explicitly disclaimed any inconsistent representations by Jefferies.  (Ex. D at 3, 10.)  These clear contractual warranties and disclaimers are fatal to Plaintiff's claims because they foreclose the crucial element of reliance and render any alleged reliance on Jefferies unreasonable as a matter of law.  _Billington v. Ginn-La Pine Island, Ltd., LLLP_, 192 So. 3d 77, 79–80 (Fla. 5th DCA 2016).

    a. *The Subscription Agreement's Explicit Disclaimers Preclude Plaintiff's Reliance on Any Representation by Jefferies.*

In executing the Subscription Agreement, Plaintiff clearly represented and warranted that he had "_relied only_ on the information contained in [the PPM] and Management Presentation" and information "furnished or made available" by Palmaz at his request.  (Ex. D at 3 (emphasis added).)  Moreover, Plaintiff agreed in Paragraph 28 of the Subscription Agreement (entitled "_Exculpation of Jefferies_") that:

> Neither Jefferies nor any of its affiliates or any of its representatives . . . _makes any representation or warranty_, or has any responsibilities as to the validity, accuracy, value or genuineness of any information, certificates or documentation delivered . . . _in connection with any of the transactions contemplated herein_.

(*Id*. at 10 (emphasis added).)  These explicit disclaimers squarely preclude any causes of action based on alleged oral misrepresentations by Jefferies.  *See Billington*, 192 So. 3d at 79–80 ("Because the disclaimer clauses in the contracts here contradicted Appellant's assertion of actual reliance and effectively waived this claim, we conclude that dismissal [of fraudulent misrepresentation claim] was proper."); *Garcia v. Santa Maria Resort, Inc.*, 528 F. Supp. 2d 1283, 1296 (S.D. Fla. 2007) (dismissing negligent misrepresentation claim where purchase agreements explicitly disclaimed any inconsistent oral representations).  Because Plaintiff's allegations of reliance are plainly inconsistent with his own written representations and warranties, the Court should not credit them—even at the pleadings stage.  *Chapman v. Abbott Labs.*, 930 F. Supp. 2d 1321, 1323 (M.D. Fla. 2013) ("A court need not accept as true allegations in a complaint that contradict or are inconsistent with judicially-noticed facts.").  The Subscription Agreement's unambiguous and comprehensive disclaimers bar Plaintiff from establishing reliance and compel dismissal of his claims.

> b.  *The Subscription Agreement Renders Any Alleged Reliance Unreasonable as a Matter of Law.*

Notwithstanding Plaintiff's wholesale disclaimer of reliance on any representation by Jefferies, the unambiguous terms of the Subscription Agreement render any such reliance unreasonable as a matter of law.

Under Florida law, justifiable reliance analyzes whether the recipient of the misinformation "is justified in relying upon its truth," or whether the recipient knows, or should know, that the statement is false.  *Rose v. ADT Sec. Servs., Inc.*, 989 So. 2d 1244, 1247 (Fla. 1st DCA 2008).  In this regard, "a person is responsible for investigating information for himself and not relying on representations of an opposing party if a

19

reasonable person in the position of the recipient would be expected to investigate." *Mims Investments, LLC v. Mosaic Fertilizer, LLC*, 2012 WL 4466521, at *6 (M.D. Fla. Sept. 27, 2012). Florida law is clear that reliance on alleged misrepresentations is unreasonable as a matter of law where, as here, those statements are contradicted by the terms of a later written agreement. *See Rosa v. Amoco Oil Co.*, 262 F. Supp. 2d 1364, 1368–69 (S.D. Fla. 2003) ("Plaintiff's reliance upon oral statements which were at variance with the written documents were not reasonable as a matter of law").

By executing the Subscription Agreement, Plaintiff represented and warranted that he possessed "the knowledge and experience in financial and business matters necessary to evaluate the investment in [Palmaz]" and "carefully reviewed and underst[ood] the risks . . . of, and other considerations relating to, the purchase of [the Series B Shares]." (Ex. D at 3.) He explicitly acknowledged that the investment would "involve a high degree of risk of loss by [Plaintiff] of [his] entire investment and [that] [Plaintiff] must bear such economic risk for an indefinite period of time." (*Id.*) He further admitted that he had "read carefully the Risks Factors included in the [PPM]" had been "furnished all information . . . that [he] deemed necessary or appropriate in order to form a decision concerning [his] investment" in Palmaz and that he had "investigated" the investment. (*Id.*)

Because of Plaintiff's admitted and expressly acknowledged expertise and due diligence, the falsity of any alleged Jefferies' misrepresentation would have been obvious and therefore, any alleged reliance is unreasonable as a matter of law. In a similar case, *BVS Acquisition Co., LLC v. Brown*, a district court in this Circuit held that the express terms of a subscription agreement and accompanying private placement memorandum precluded any

reasonable reliance on contrary oral representations.  649 F. App'x 651, 660 (11th Cir. 2016). In *BVS*, the plaintiffs purchased $10 million of preferred stock in a private placement and after the issuer bank collapsed, the plaintiffs brought suit against its chairman and CEO for negligent misrepresentation.  *Id*. at 656.  The court noted that the subscription agreement executed by the plaintiffs "mandated that [they] be cognizant of the 'RISK FACTORS' disclosed" in the accompanying private placement memorandum.  *Id*. at 660.  Those risk factors, like the comprehensive risk disclosures reviewed by Plaintiff in this case, "addressed every subject of any purported misrepresentation . . . made to Plaintiffs and effectively disclaimed liability for [the defendant's] purported omissions."  *Id*. at 660–61.  The Court granted summary judgment—later affirmed in relevant part by the Eleventh Circuit—because the terms of the subscription agreement rendered any reliance by plaintiff on the defendant's statements "unreasonable as a matter of law."  *Id*. at 660 n.5.  Just like in *BVS*, even if Plaintiff had not disclaimed all reliance on alleged statements by Jefferies in connection with his Palmaz investment, those statements were flatly contradicted by the Subscription Agreement and the PPM's risk disclosures—rendering any reliance unjustifiable as a matter of law.

ii. <u>*Plaintiff Cannot Plead Reliance on Any Representations That Post-Date His Investment*</u>.

Plaintiff's Complaint devotes nine pages to his alleged discussions with Ostrove in the years following his 2012 investment.  (*See* Compl. ¶¶ 15–20.)  However, the gravamen of his Complaint is that Jefferies' alleged "fraudulent or negligent behavior that caused Plaintiff's investment." (*Id*. ¶ 2.)  Since he cannot have relied on any alleged post-investment representations prior to his decision to invest in Palmaz, those representations cannot support

Plaintiff's claims. *See Capital Holdings USA, LLC v. Am. Paramount Fin.*, 2012 WL 13018307, at *5 (S.D. Fla. Jan. 24, 2012) ("Plaintiff cannot establish reliance or causation for statements made after [transaction in suit]"); *see also Infinite Energy Inc. v. Econnergy Energy Co., Inc.*, 2010 WL 11518548, at *3 (N.D. Fla. Oct. 13, 2010) ("Because [counterclaiming defendant's] fraud and misrepresentation claims are premised on inducement into the original merger agreement and three subsequent amendments, [a] statement made after the Third Amendment cannot be the basis of any reasonable reliance by [counterclaiming defendant].").

Plaintiff alleges in passing that Jefferies' "substantially inhibited [him] from transferring" his Palmaz shares in the years after his investment.  (Compl. ¶ 15.)  To the extent Plaintiff means to assert a "holding claim" by this allegation—i.e. that Jefferies induced him into holding and not selling his Palmaz Series B shares—the existence of that cause of action under Florida law is highly doubtful.  *See*, *e.g.*, *Bruhl v. Controy*, 2007 WL 983228, at *9 (S.D. Fla. Mar. 27, 2007) ("There is no definitive determination regarding the viability of a holding claim under Florida common law.").  Moreover, even the rare decision that assumes the existence of holding claims makes clear that Plaintiff has failed to state one. As in *Rogers v. Cisco Systems, Inc.*, Plaintiff nowhere alleges that he refrained from making any *specific* transactions in reliance on Jefferies' post-investments representations.  268 F. Supp. 2d 1305, 1314 (N.D. Fla. 2003) ("[Plaintiffs] do not allege specifically, *how many shares* they would have sold and *when* they would have sold them.") (emphasis in original). Indeed, the Complaint candidly acknowledges that Plaintiff had by then "little hope" of selling his Palmaz shares in the thin secondary market for those unregistered securities—a

fact he was expressly warned of by the PPM.  (*Compare* Compl. ¶ 15. *with* Ex. C at 30.)

For the reasons above, none of the post-investment misrepresentations are relevant to this case and cannot be utilized to sustain a claim for negligent or fraudulent misrepresentation.

### 3.   The Complaint Does Not Allege that Jefferies Owed Plaintiff a Duty of Disclosure.

Plaintiff alleges that Jefferies "omitted material information that should have been disclosed" in connection with his Palmaz investment.  (Compl. ¶¶ 10, 13.)  However, under Florida law, omissions of fact are not actionable as negligent or fraudulent misrepresentations "unless the party omitting the information owes a duty of disclosure to the complainant." *Kahama VI, LLC v. HJH, LLC*, 2013 WL 6511731 at *6 (M.D. Fla. Dec. 12, 2013).  A duty to disclose only arises when "one party has information that the other party has a right to know because of a fiduciary or other relation of confidence between them." *Id.* The Complaint does not contain any facts that support a fiduciary-like relationship between the parties.

In order for a confidential or fiduciary relationship to exist under Florida law, "there must be substantial evidence showing some dependency by one party and some undertaking by the other party to advise, counsel, and protect the weaker party." *Asset Prot. Plans, Inc. v. Oppenheimer & Co.*, 2011 WL 2533839, at *6 (M.D. Fla. June 27, 2011).  Such concepts are grossly inapposite to the present case.  Plaintiff was, and is currently, a licensed securities broker and investment advisor.  He is by his own admission "a thorough, careful investor." (Compl. ¶ 18.)  Even if Jefferies made representations regarding Palmaz, Plaintiff was a sophisticated investor with the "knowledge and experience in financial and business matters"

who warranted that he conducted diligence on the investment and made his investment decision **solely** based on such diligence.  (Ex. D at 3.)  Plaintiff's allegations bear no resemblance whatsoever to the limited and exceptional circumstances in which a fiduciary relationship has been recognized between a financial institution and its customers.  *See Shields & Co. v. Bright,* 254 F. Supp. 2d 1253, 1260 (M.D. Fla. 2003), *aff'd in part*, *rev'd in part*, 99 F. App'x 875 (11th Cir. 2004) (elderly, uneducated clients with limited investment experience relied on brokerage firm's registered representative); *Capital Bank v. MVB, Inc.*, 644 So. 2d 515, 520 (Fla. 3d DCA 1994) (defendant bank's agent "expressly invited [the customer's] reliance by urging [the customer] to trust him and by reassuring [the customer] that he was part of the [bank's] family.").  For these reasons, there can be no plausible allegation of any fiduciary-like relationship in this case.  Therefore, Plaintiff fails to state a claim based on any omission of fact by Jefferies.

## V.    <u>CONCLUSION</u>

For the foregoing reasons, the Complaint should be dismissed in its entirety. Pursuant to Local Rule 3.01(j), Jefferies hereby requests oral argument on this motion. Jefferies estimates that 15 minutes per side will be sufficient for oral argument.

Dated:  November 7, 2018                    Respectfully submitted,


                                             /s/ John F. Lauro
                                            JOHN F. LAURO – **Local Counsel**
                                            Florida Bar No. 0794074
                                            jlauro@laurolawfirm.com
                                            MICHAEL G. CALIFANO – **Local Counsel**
                                            Florida Bar No. 68400
                                            mcalifano@laurolawfirm.com
                                            LAURO LAW FIRM
                                            101 East Kennedy Boulevard, Suite 3100
                                            Tampa, Florida 33602
                                            T: 813-222-8990
                                            F: 813-222-8991


                                            SCOTT S. BALBER – **Trial Counsel**
                                            *Admitted Pro Hac Vice*
                                            scott.balber@hsf.com
                                            HERBERT SMITH FREEHILLS
                                            NEW YORK LLP
                                            450 Lexington Avenue, 14th Floor
                                            New York, NY 10017
                                            T: 917-542-7600

                                            *Attorneys for Defendant Jefferies LLC*



## CERTIFICATE OF SERVICE

I HEREBY CERTIFY on this 7th day of November, 2018, I electronically filed the

foregoing document with the Clerk of the Court using CM/ECF system, which will serve a

notice of electronic filing to all counsel of record.


                                             /s/ John F. Lauro
                                            John F. Lauro