## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

ROBERT TANNENBAUM,

                    Plaintiff,

vs.

JEFFERIES LLC,

                    Defendant.

Case No.: 8:18-cv-00487-EAK-CPT

**<u>JURY TRIAL DEMANDED</u>**

---

### <u>PLAINTIFF'S RESPONSE IN OPPOSITION TO</u>
### <u>DEFENDANT'S AMENDED MOTION TO DISMISS THE COMPLAINT</u>

Plaintiff Robert Tannenbaum ("Plaintiff"), respectfully submits this memorandum in opposition to the Rule 12(b)(6) amended motion to dismiss the Complaint filed by Defendant Jefferies LLC ("Defendant") [Dkt. No. 25].  In support hereof, Plaintiff presents the following:

### <u>INTRODUCTION</u>

There is a maxim among candidates for public office that one must never answer the question asked, but rather the question one *wished* had been asked.  Here, Defendant moves to dismiss a complaint it *wished* had been filed, instead of the actual Complaint in this case.

Plaintiff's Complaint tells a straightforward tale of misstatements, half-truths, and omissions issued by Defendant first for short-term financial gain, and then in order to continue and cover up fraud.  This went on for several years until, despite Defendant's concerted efforts, the whole truth finally emerged.  In other words, the Complaint offers a garden variety example of conduct that fraudulent and negligent misrepresentation claims are designed to remediate.

Plaintiff has alleged a particularized compilation of actionable oral misrepresentations made by Defendant that were designed to, and did, (1) convince Plaintiff to invest hundreds of thousands of dollars into a company, Palmaz Scientific, Inc. (the "Company"), that Defendant knew, or did not care if it knew, was in materially worse shape than what it was telling Plaintiff; and then (2) continue

and paper over those initial misrepresentations largely in the hopes of delaying or avoiding discovery by Plaintiff that he had been snookered by Defendant.  Accompanying these, Plaintiff has detailed with sufficient specificity that he (1) relied, justifiably, on these material misrepresentations and omissions in changing his mind and deciding to invest, and then declining to exercise shareholder rights that may have salvaged his investment before the Company went bankrupt; and (2) understood – including as a result of his own experience – that Defendant was duty-bound to not make the very misrepresentations he ultimately learned it had made to him over and over again.

Plaintiff has therefore pled the elements of fraudulent and negligent misrepresentation with sufficient particularity to satisfy Federal Rule of Civil Procedure 9(b) – particularly in light of this Circuit's instruction to interpret Rule 9(b) holistically rather than mechanistically, so as to ensure that defendants are sufficiently apprised of the claims against them while remaining mindful that plaintiffs who lucidly detail prolonged, multi-act schemes to defraud at the pleading stage deserve a fair chance to investigate their claims in discovery.

For example, the Complaint sufficiently specifies the required "who-what-where-when-and-how" regarding false statements of fact intentionally or negligently made by Defendant in October and December 2011 that were not only material to but also the very basis for Plaintiff's decision to reverse course and invest in the Company.  Plaintiff describes Defendant's very telephonic assertions that changed his mind about investing in the Company after Defendant's written materials failed to tempt him – statements that he later learned were comprised of fabrications, exaggerations, half-truths, and omissions regarding key items such as the Company's finances and operations; Defendant's own claimed investment in the Company; and the supposedly enthusiastic and ongoing (rather than abandoned) financial support of a powerful, reputable industry leader, Johnson & Johnson.

The Complaint further specifies – even though Plaintiff is entitled to aver knowledge generally under Rule 9(b) – several reasons why Defendant's Ostrove self-evidently knew of, or was

recklessly or negligently indifferent regarding, the falsity of what he was telling Plaintiff during these and later phone calls.  As just one example, Defendant's Ostrove surely was aware he had not invested in the Company himself.  Importantly, Florida law makes clear that whether or not Defendant entered these conversations duty-bound to truthfully disclose the information discussed, once Defendant decided to issue representations regarding the Company, it was required to do so without misleading Plaintiff, which it failed to do.

As well, the Complaint plainly maps out that, as Defendant intended, Plaintiff relied on representations made by Defendant in reversing course and investing in the Company, and moreover that said reliance was justified in light of, among other things, Plaintiff's recognition that Defendant had unique, superior knowledge of and access to the categories of information about the Company it was touting during these calls; and was furthermore required to speak truthfully and in an informed fashion about the investment it was recommending.

In other words, this Complaint does the job asked of it by the Federal Rules and this Circuit: it places Defendant on sufficiently particular notice of the nature of the fraud-based claims brought against it.  Defendant's Motion therefore fails, not least because it effectively wishes away several categories of allegations in the Complaint.  As representative example, Defendant avoids the most inflammatory allegations in the Complaint in order to argue that no actionable misrepresentations were pled.  Rather than attempting to address those allegations, Defendant treats them as though they never existed.  This renders the Motion, to put it mildly, incomplete.

Moreover, Defendant inverts Florida and federal law in its filing, perhaps most flagrantly in shoehorning a statute of limitations-based affirmative defense into a motion to dismiss by, once again, treating allegations in the Complaint that moot its argument as optical illusions.  The Complaint directly sets forth the piecemeal manner in which Defendant's wrongdoing was revealed – despite Defendant's concerted efforts – between events leading up to the Company's 2016 bankruptcy and the final pieces of the puzzle revealed in 2017 court filings by the Company's

bankruptcy trustee and former Company investors.  Yet Defendant declines to acknowledge these allegations at all – let alone that the law does not task plaintiffs with negating statute of limitations arguments in their complaints.

Most prominently, Defendant attempts to transform the Subscription Agreement between Plaintiff and the Company into a retroactive license to defraud.  Not so.  Defendant's behavior was in no way among the protections the Subscription Agreement offered; and even if the Subscription Agreement was designed to benefit fraudsters, this Circuit only last year affirmed that contractual disclaimers under Florida law are to be weighed against all other evidence at later stages of the case, rather than used to dismiss otherwise proper complaints.

In sum, despite Defendant's anxious efforts to engineer a new Complaint composed exclusively of allegations vulnerable to dismissal – in lieu of engaging with the actual allegations in this case – Plaintiff respectfully submits that dismissal is not here warranted.

## LEGAL STANDARD

When confronting a Rule 12(b)(6) motion to dismiss, the well-pled allegations in a complaint are presumed to be true, and the Court evaluates whether the facts alleged offer enough non-conclusory information to state a claim for relief that is plausible on its face.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"The plausibility standard calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of the defendant's liability."  *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (quotations omitted).  As well, courts "must also view the complaint in the light most favorable to the plaintiff and must resolve any doubts as to the sufficiency of the complaint in the plaintiff's favor."  *GlobalOptions Services, Inc. v. N. Am. Training Group, Inc.*, 131 F. Supp. 3d 1291, 1296 (M.D. Fla. 2015) (citation omitted).

## ARGUMENT

### I.   Plaintiff's Claims Have Been Timely Brought

The Complaint plainly and particularly describes the sequence of events between Defendant's issuance of actionable misrepresentations that caused Plaintiff to invest hundreds of thousands of dollars into the Company; Defendant's persistent machinations to deter discovery by Plaintiff of (1) ongoing misdeeds at the Company as well as (2) the misleading character of Defendant's earlier statements on which Plaintiff relied in deciding to invest; and a series of events (any of which render this litigation timely brought if deemed the moment of discovery for statute of limitations purposes) between 2015 and 2017 that, altogether, finally apprised Plaintiff of the existence, breadth, and depth of Defendant's successful misrepresentations.  *See, e.g.*, Compl. ¶¶ 19-21.  The Motion tries and fails to sidestep these details in order to argue this case qualifies among the rare instances in which an affirmative defense warrants dismissal at the pleading stage.  Such an argument is facially defective.

#### a.   *Legal Standard*

An assertion that the statute of limitations has passed is an affirmative defense, *see* Fed. R. Civ. P. 8(c)(1), and therefore customarily not appropriate as a basis for dismissal under Rule 12(b)(6), unless it is apparent on the face of the complaint that the plaintiff's claims are untimely. *See, e.g.*, *Gullo v. Equifax Info. Services LLC*, 2016 WL 3221735, at *3 (M.D. Fla. June 8, 2016) (Kovachevich, J.).  "Because a statute of limitations defense is an affirmative defense, [plaintiffs] are not required to negate it in their complaint."  *Id.* (citation omitted).

Under Florida law, fraud-based claims are subject to a four-year statute of limitations period, *see* Fla. Stat. § 95.11(3)(j), and such claims accrue "from the time the facts giving rise to a cause of action were discovered or should have been discovered with the exercise of due diligence."  Fla. Stat. § 95.031(2)(a).  *See Hearndon v. Graham*, 767 So. 2d 1179, 1184 (Fla. 2000).  In evaluating the degree of due diligence exercised by a fraud plaintiff, Florida instructs that "a recipient may rely on

the truth of a representation, even though its falsity could have been ascertained had he made an investigation, unless he knows the representation to be false or its falsity is obvious to him." *Besett v. Basnett*, 389 So. 2d 995, 998 (Fla. 1980).

As well, when a complaint includes allegations outlining when and how the fraud was discovered, and that do not suggest the plaintiff was indiligent, "the question of when fraud is discovered is one for the jury and cannot be decided on a [Rule 12(b)(6)] motion to dismiss." *Am. Home Assur. Co. v. Weaver Aggregate Transport, Inc.*, 773 F. Supp. 2d 1317, 1323 (M.D. Fla. 2011). *See also Knight v. E.F. Hutton & Co.*, 750 F. Supp. 1109, 1113 (M.D. Fla. 1990) (holding, in light of allegations of fraudulent concealment of "investment facts," that "the issue of whether Plaintiff has exercised sufficient due diligence in timely discovering the fraud . . . cannot be resolved on a motion to dismiss.  It is a question for the jury.") (Kovachevich, J.).

### b.       Plaintiff Facially Alleged Timely Discovery of Defendant's Misrepresentations

The Complaint offers a chronology of Defendant's escalating misrepresentations that satisfies the low threshold for avoiding dismissal on statute of limitations grounds in two interrelated ways: first, the Complaint details (1) multiple materially false statements by Defendant in October and December 2011 on which Plaintiff relied in purchasing Company shares, followed by (2) a series of lulling misrepresentations designed to deter discovery of the compromised state of affairs at the Company, and which culminated in (3) two phone calls in April 2016 between the parties that included overdue *mea culpas* and more misrepresentations by Defendant's Ostrove. *See, e.g.*, Compl., ¶ 18.  Under this path to the discovery process, Plaintiff has alleged that a prolonged, multi-act coverup was calculated to and did delay his discovery of the actionable misrepresentations made to him until no earlier than 2015, when "distressing news about the Company [] was beginning to leak out," Compl. ¶ 16(d), and no later than separate 2017 filings, including by the Company's bankruptcy trustee, that informed Plaintiff of the true extent of Defendant's 2011 misstatements and omissions regarding, for example, the actual financial and operational health of the Company and the

radically different truth of Johnson & Johnson's former – not current – involvement with the Company.  *See id.* ¶ 21.  Thus, at minimum, here "the delayed discovery issue is inextricably woven into factual questions surrounding the transaction at issue," and dismissal is not warranted.  *Razor Capital, LLC v. CMAX Finance LLC*, 2017 WL 3481761, at *5 (S.D. Fla. Aug. 14, 2017).  *See also Knight*, 750 F. Supp. at 1113 (allegations of fraudulent concealment of "investment facts" render the delayed discovery question a jury issue) (Kovachevich, J.).

As well, the Complaint sets forth an alternative timeline in which the misrepresentations at issue continued past Plaintiff's 2012 purchase of Company stock, including via escalating misrepresentations made by Defendant to Plaintiff through the Company's 2016 bankruptcy. Plaintiff has alleged that the extensive lulling representations made by Defendant to Plaintiff regarding the Company – which Plaintiff was entitled to credit due to Defendant's asserted superior knowledge regarding the Company displayed by, among other things, Defendant's 2014 production of the Company's CEO for a personal, reassuring call to Plaintiff regarding the health of the Company within 24 hours of boasting that he could engineer such a call – harmed Plaintiff's ability to unearth problems at the Company that could have, among other options, been remediated pursuant to Plaintiff's rights as a shareholder (*i.e.*, derivative litigation; books and records inspections; requesting the formation of a Special Committee of board members to investigate conduct by Company officers; and so on and so forth).  *See* Compl. ¶¶ 30-31.  This theory too demonstrates that, at minimum, meaningful questions of fact designed to be resolved by the trier of fact exist as to when Plaintiff reasonably should have uncovered the fraud.[1]

---

[1] To be clear, this lawsuit is timely regardless of whether the four-year clock started at the time Plaintiff learned of "distressing news" regarding the Company in 2015, Compl. ¶ 16(d), or at the time of the April 2016 phone calls between Plaintiff and Defendant, *id.* ¶¶ 18-20, or all the way through to the 2017 revelations in the Company bankruptcy trustee court filings, *id.* ¶ 21.  *Accord McGinley v. Jetton*, 2011 WL 2600443, at *3 (M.D. Fla. June 29, 2011) (reminding that plaintiffs are not required to "negate" the statute of limitations affirmative defense in their complaints, and denying motion to dismiss on statute of limitations grounds even when complaint did not specify the exact date the statute began to run under the delayed discovery doctrine) (Kovachevich, J.).

Defendant's arguments to the contrary are unavailing and inapposite.  Defendant cites primarily to a recent Eleventh Circuit decision, *Bedtow Grp. II, LLC v. Ungerleider*, 684 F. App'x 839 (11th Cir. 2017), purportedly for the proposition that Plaintiff should have uncovered the misrepresentations here pled by no later than the date he signed the Subscription Agreement.  Mot. at 10-11.  Yet the *Ungerleider* case issued that holding explicitly because its plaintiff included zero "allegation[s] that Defendants had 'exclusive or superior knowledge'" regarding the misrepresentations alleged, as required to satisfy the due diligence showing for the Florida delayed discovery rule.  *Id.* at 842 (citation omitted).[2]  Plaintiff has here included multiple allegations that Defendant not only enjoyed but ***boasted of*** its "unique, superior knowledge" regarding the Company – and moreover was under heightened duties to speak truthfully regarding investment facts to its clients, as both Plaintiff and Defendant were aware.  *See, e.g.*, Compl. ¶¶ 8(a)-(b), 17, 37.[3]  *Accord In re Palm Ave. Partners, LLC*, 576 B.R. 239, 253-54, 257-58 (Bankr. M.D. Fla. 2017) (delayed discovery doctrine applied to deny statute of limitations affirmative defense under circumstances where defendant was under duty to disclose to plaintiff-investors at the time he made actionable fraudulent and negligent misrepresentations).

Therefore, as it is apparent from the face of the Complaint that these fraud-based claims were timely discovered and timely filed, Defendant cannot fit itself into the "facially evident" exception to the general rule that affirmative defenses need not be negated at the pleading stage.[4]

---

[2] Defendant also cites to an out-of-circuit case, *Freeman v. Bianco*, 2003 WL 179777 (S.D.N.Y. Jan 24, 2003), *see* Mot. at 10, that included no reference to or discussion of the delayed discovery doctrine, likely in part because the *Freeman* plaintiffs filed a "complaint [that] is so poorly drafted that it is difficult to characterize the nature of plaintiffs' claims."  2003 WL 179777, at *4.  Such a setting has no practical bearing on the particulars of this case.

[3] Defendant's citation to this Court's holding in a summary judgment setting, *Armbrister v. Roland Int'l Corp.*, 667 F. Supp. 802 (M.D. Fla. 1987), which was premised on "voluminous" evidence unearthed by both sides during discovery, is at minimum premature, and involves a distinguishable factual setting in which the relevant misrepresentations were mere "puffing" rather than, for instance, misleading claims here that industry icon Johnson & Johnson was and would be an enthusiastic fellow investor.  *Id.* at 811.

[4] Defendant also includes as an exhibit to the Motion prior correspondence between the parties in 2016, apparently to complain that Plaintiff should have filed this lawsuit at that time.  That correspondence, if it

II.      **Plaintiff's Claims Have Been Properly Pled under Rule 9(b)**

Plaintiff's Complaint sounds in fraud and has been particularly pled according to the dictates of Rule 9(b) and this Circuit's longstanding precedent regarding same.  *See, e.g.*, *Friedlander v. Nims*, 755 F.2d 810, 813 n.3 (11th Cir. 1985), *abrogated on other grounds by Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541 (11th Cir. 2002) ("[A] court considering a motion to dismiss for failure to plead fraud with particularity should always be careful to harmonize the directives of Rule 9(b) with the broader policy of notice pleading found in Rule 8."); *Hummel v. Tamko Building Products, Inc.*, 2016 WL 7340301, at *2 (M.D. Fla. Mar. 28, 2016) ("Importantly, Rule 9(b) does not abrogate the concept of notice pleading").  In response, Defendant's Motion tries to wish much of the Complaint out of existence in order to argue the remainder is ill-pled – a strategy which reveals its shortcomings on a cursory comparison of Complaint allegations with those portions of the Motion.

a.      *Legal Standard*

Federal Rule of Civil Procedure 9(b), which governs claims that sound in fraud, requires that the "circumstances constituting fraud" be alleged with particularity, while "conditions of a person's mind" such as intent and knowledge may be alleged generally.  Fed. R. Civ. P. 9(b).  *See, e.g.*, *Brightstar Corp. v. WSA Distributing Inc.*, 2010 WL 1027420, at *3 (S.D. Fla. Mar. 8, 2010) ("Rule 9(b) [] does not require that Plaintiff plead every element of the fraud claim with particularity, only the *circumstances* constituting fraud.") (emphasis in original).  As to the particularity requirement, in this Circuit it may be satisfied by showing:  "(1) precisely what statements were made in what documents or oral representation or what omissions were made, and (2) the time and place of each statement and the person responsible for making (or in the case of omissions, not

---

is relevant to this Motion at all, merely demonstrates salutary conduct by Plaintiff to (1) attempt to resolve this dispute prior to burdening the federal courts with another case, and (2) determine in the aftermath of that correspondence to continue diligently investigating his claims rather than racing to the courthouse – a decision that was rewarded when the Company's bankruptcy trustee weighed in with substantial new information and details that (1) were highly relevant to these fraud-based claims in 2017, as well as (2) exposed several statements made by Defendant's Ostrove in the April 2016 telephone calls as misleading.

making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008).

Nevertheless, "this heightened rule must not be read to abrogate the general pleading standard," for when determining a motion to dismiss, "the broader policy of 'notice pleading' must be harmonized with the specificity required in Rule 9(b)." *Firehouse Gallery, LLC v. Phillips*, 2009 WL 4015575, at *3 (M.D. Fla. Nov. 19, 2009) (Kovachevich, J.).  At the pleading stage, "it is enough" for plaintiffs to detail "what [they] lost and how [they] lost it," such that defendants "know what they are accused of and have sufficient information to formulate their defense." *Freeman v. Sharpe Resources Corp.*, 2015 WL 2151723, at *10 (M.D. Fla. May 16, 2013).

>    **b.**   ***Plaintiff's misrepresentation-based claims are particularly pled***

Plaintiff alleges the "circumstances constituting fraud" by Defendant with substantial detail throughout the misrepresentation-based Complaint.  For illustrative example:

- Plaintiff details the participants (Plaintiff and Defendant's Ostrove); dates (October 2011 and December 2011); locations (Tampa, Florida and New York City, NY); subject matter and purpose (so Defendant's Ostrove could try again to convince Plaintiff to invest in the Company after Plaintiff had declined to do so after evaluation of Defendant's promotional literature); means of communication (cellular telephone); initiating party for both calls (Defendant); gap of time between the calls (weeks); and outcome (a refusal to invest by Plaintiff after the October call, followed by an agreement to invest by Plaintiff after the December call) of the phone calls between Plaintiff and Defendant that act as the wellspring of this action.   *See* Compl. ¶¶ 8-14. These allegations delineate the core misrepresentations made by Defendant during these calls, including that both Johnson & Johnson and Mr. Ostrove himself were current and enthusiastic investors in the Company (with Johnson & Johnson poised to make further investments); that the

Company's technology was novel, revolutionary, and close to market; and that the Company was "well- and efficiently-run" by its "brilliant" new CEO (for whom Defendant personally vouched) and "genius" founder – each of which was a materially false statement when made, as further detailed in the Complaint. *See, e.g.*, *id.* (setting forth, among other revelations, that Johnson & Johnson was not a current Company investor, but rather had licensed and then abandoned its involvement in a predecessor entity to the Company after the same technology – repackaged as new and "revolutionary" by Defendant to Plaintiff – proved unworkable; Defendant's Ostrove did not invest his own money in the Company; the Company was effectively insolvent and lacked a functional board of directors at the time Defendant pitched it as healthy and well-run; and the Company's founder and CEO were together "extract[ing] millions of dollars of investor funds from the Company for personal benefit" contemporaneous to Defendant's 2011 calls).

- The Complaint describes the source and existence of duties – including via governmental edict, industry norms, and Defendant's own publications – that Plaintiff knew were owed to him by Defendant with respect to the subject matter of these calls, and which were violated by virtue of the above-described and other material misrepresentations and omissions made by Defendant to Plaintiff. *See, e.g.*, *id.* ¶ 8(a)-(b). In that same vein, the Complaint at multiple junctures explains how and why Plaintiff reasonably and justifiably understood that Defendant had unique, superior knowledge of and access to Company information at the time Defendant made and reaffirmed its core misrepresentations about the investment – including due to Defendant's prior involvement in creating offering literature for the Company and Defendant's persistent assurances as to its warm, ongoing, special relationship with Company leadership, proof of which was provided when Defendant produced the Company's CEO for a direct lulling call to Plaintiff in 2014 within 24 hours of boasting to Plaintiff that it could procure such a call. *See, e.g.*, *id.* ¶ 17.

The above representative excerpts demonstrate clear conformance with the *Mizzaro* factors – and go above and beyond to the extent Plaintiff offers detailed facts regarding the state of mind elements of these claims. *See Mizzaro*, 544 F.3d 1230, 1237 ("[I]t is sufficient to plead the who, what, when, where, and how of the allegedly false statements and then allege generally that those statements were made with the requisite intent.").

Meanwhile, Defendant's mechanistic interpretation of Rule 9(b) – alongside its omission of some of the most difficult allegations to overcome – stands in clear contrast to the Complaint's actual allegations, as well as governing law. For example, at one juncture in the Motion, Defendant purports to premise dismissal on the fact that the Complaint at times sets forth the "when" of the fraud by month and year, rather than by month, day, and year. *See* Mot. at 13-14. This misconstrues this Circuit's Rule 9(b) inquiry, which holistically evaluates each individual fraud-based complaint to ensure defendants have been placed on notice of the claims brought against them with sufficient particularity, forswearing the formulaic, one-size-fits-all approach advocated in the Motion. *See, e.g.*, *United States v. Baycare Health Sys.*, 2015 WL 4878456, at *4-5 (M.D. Fla. Aug. 14, 2015) (affirming that "[w]hether a complaint contains sufficient 'indicia of reliability' to satisfy Rule 9(b) requires a 'case-by-case' determination," and determining that otherwise detailed pleadings that specified the "when" of the fraud via providing "representative years" satisfied Rule 9(b)); *Firehouse Gallery*, 2009 WL 4015575, at *3 (rejecting dismissal of claims that meaningfully detailed the fraud scheme at issue in conformance with the *Mizzaro* factors, including via allegation that the fraud began in "late 2006"). *See also Burgess v. Religious Tech. Center, Inc.*, 600 F. App'x 657, 662-63 (11th Cir. 2015) (observing that in the Eleventh Circuit, Rule 9(b) may be satisfied not just by conformance with the traditional factors, but also via "alternative," "relaxed" means, such as in the case of "prolonged, multi-act schemes").

Defendant's own cases recognize this: *MidAmerica C2L, Inc. v. Siemens Energy, Inc.*, 2017 WL 1322327 (M.D. Fla. Apr. 7, 2017), addressed a misrepresentation-based complaint that "wholly"

failed to "identify the specific statements or representations made, where the statements or representations were made and by whom, how Plaintiffs were misled by the statements or representations, or what [Defendant] gained from the alleged fraud," such that under the circumstances, the somewhat more particularized allegations as to the time of the fraud could not rescue the remainder of the complaint.  *Id.* at *4.  *See also S. Pan Services Co. v. S.B. Ballard Constr. Co.*, 2008 WL 3200236, at *5 (M.D. Fla. Aug. 6, 2008) (case cited in the Motion dismissing fraud-based claims that "very nearly" met the standard due to some particularization, but also failing to at all allege the location of the fraud or even designate a time during which the fraud occurred besides at some point "after" a contract was executed).

In any event, Plaintiff offers particularized allegations that cumulatively satisfy the *Mizzaro* factors; and moreover self-evidently pleads a prolonged, multi-act scheme by Defendant that includes (1) detailed discussion of the circumstances constituting the first (the October and December 2011 calls) and last (the April 12-13, 2016 calls) instances of Defendant's fraud, as well as (2) multiple "illustrative instances" of the ongoing fraud/coverup undertaken by Defendant at points across 2012-2015.  *See* Compl. ¶ 18-19.  The Complaint thus satisfies Rule 9(b) via either the traditional or "relaxed" routes.  *See Burgess*, 600 F. App'x at 662-63.

### c.    *The elements of Plaintiff's claims are well and appropriately pled*

Plaintiff, by alleging a detailed narrative of escalating misrepresentations by Defendant that convinced Plaintiff to invest in the Company; covered up the misleading character of those same pre-investment representations; and inhibited Plaintiff from exercising rights available to him that could have salvaged his investment and rescued the Company from the charlatans leading it, properly pleads the elements of fraudulent and negligent misrepresentation in Florida.[5]

---

[5] *See, e.g.*, *Burger v. Hartley*, 896 F. Supp. 2d 1157, 1170 (S.D. Fla. 2012) (confirming that under Florida law, there are four elements of fraudulent misrepresentation: (1) a false statement concerning a material fact; (2) the representor's knowledge that (i) the representation is false or (ii) she, he, or it made the statement without knowledge of its truth or falsity; (3) an intention that the representation induce another

Nevertheless, Defendant offers several elements-based arguments in its Motion.  *See* Mot. at 14-24.  A closer look reveals these arguments to be founded on a confusing strategy:  namely, Defendant's unwillingness to acknowledge the existence of many of the key allegations in the Complaint, paired with its inversion or misapplication of governing Florida law with respect to the remainder.  For example, with respect to the "**false statement of material fact**" element shared by both causes of action here pled and complained of by Defendant:

**Plaintiff Pleads:**  A detailed procession of material false statements and omissions made by Defendant, as summarized *supra* at 12-14, on topics including Defendant's Ostrove's own financial participation in the Company; Johnson & Johnson's present and historical relationship with the Company; and the financial and operational solvency of the Company, that Plaintiff alleges convinced him to change his mind and invest in the Company.  Such allegations individually and together satisfy the requirement of pleading a false statement of material fact.  *See, e.g.*, *Burger*, 896 F. Supp. 2d at 1170 (S.D. Fla. 2012) (liability may be established when defendant claimed a third party had already invested in the entity when in fact no such investment had occurred, alongside misrepresentations that key transactions would "close soon" and the investment was "sound"); *Bankers Life Ins. Co. v. Credit Suisse First Boston Corp.*, 590 F. Supp. 2d 1364, 1369 (M.D. Fla. 2008) (omission of fraudulent assets of the touted company's balance sheet, as well as omission of accurate updates of that entity's financial health, sufficed to plead this element) (Kovachevich, J.).

**Defendant argues**:  ***most of the above allegations do not exist in the Complaint***.  *See* Mot. at 15 ("Plaintiff alleges only vague pronouncements of confidence and unsubstantiated predictions of

---

to act on it; and (4) consequent injury by the party acting in reliance on the representation) (citations omitted); *Posen Constr., Inc. v. Lee Cty.*, 921 F. Supp. 2d 1350, 1360 (M.D. Fla. 2013) ("Under Florida law, a plaintiff must plead and prove the following to establish a claim for negligent misrepresentation: (1) the defendant made a misrepresentation of a material fact; (2) the defendant made the representation without knowledge of its truth or falsity, or under circumstances that it should have known of its falsity; (3) the defendant intended that the representation would induce another to act on it; and (4) and injury resulting from justifiable reliance on the misrepresentation.").

future returns.").[6]  Defendant then recasts the false statements it is willing to acknowledge as non-actionable puffery.  Mot. at 15.  By presenting argument directed at an invented pleading, rather than acknowledging and trying to overcome the actual false statements pled in the Complaint, Defendant's Motion rebuts itself, and therefore does not support dismissal of Plaintiff's well-pled allegations as to this element of his claims.

With respect to the elements of Plaintiff's claims relating to **knowledge:**

**Plaintiff pleads:**  A combination of (1) general allegations that Defendant knew, or knew it did not know, *e.g.*, Compl. ¶ 24, or should have known, *e.g.*, *id.* ¶ 35, the falsity of its misstatements and omissions delineated throughout the Complaint; and (2) detailed allegations regarding Plaintiff's reasonable belief that Defendant would know what it was talking about, for reasons ranging from both parties' awareness of industry requirements that Defendant educate itself on the topics it presents to potential investors prior to such presentations; Defendant's persistent boasts (and, ultimately, proof) regarding its unique, personal relationship with Company leadership; and Defendant's involvement in creating the PPM for the Company that Plaintiff reviewed and tossed aside in initially deciding not to invest.  *See, e.g.*, *id.* ¶¶ 8, 16(c), 17, 19(c)-(d).  These allegations meet and exceed Rule 9(b)'s reminder that state of mind allegations such as knowledge are to be alleged "generally" rather than with particularity.  *See, e.g.*, *W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.*, 287 F. App'x 81, 88 (11th Cir. 2008) (rejecting dismissal of admittedly "conclusory" allegations of knowledge given Rule 9(b)'s statement that knowledge may be averred generally in the fraud setting); *U.S. Sur Co. v. Edgar*, 2013 WL 6332973, at *9 (M.D. Fla. Dec. 5, 2013) (allegation that defendant knew of the misrepresentation at the time he made it sufficient at pleading stage for fraud-based claims).  Moreover, these allegations offer a sufficient platform from

---

[6] Interestingly, Defendant does acknowledge at least the Johnson & Johnson-related allegations in the Complaint early in the Motion, *see* Mot. at 6, but then avoids those allegations in the Argument section of its brief.

which the Court may reasonably infer at this stage of the case that Defendant knew; knew it did not

know; or should have known the falsity of its misrepresentations.

**Defendant Argues:**  As before, primarily that several of these allegations simply do not

exist.  *See* Mot. at 16 (claiming that the only allegations in the Complaint relating to state of mind are

the general averments within each Count).  Defendant also cites to and attempts to transmogrify

nuanced, fact-specific holdings in the Southern District of Florida into a global assertion that

knowledge must be pled with particularity, the language of Rule 9(b) notwithstanding.  *Compare,*

*e.g.*, *Kling v. Jon Bourbeau, P.A.*, 2016 WL 8730199, at *4 (S.D. Fla. Apr. 25, 2016) (dismissing

claim for failure to specify the "what . . . when . . . and how" of the alleged misrepresentations),

*Zarrella v. Pac. Life Ins. Co.*, 755 F. Supp. 2d 1218, 1223 (S.D. Fla. 2010) (premising dismissal on

failure to allege time, place, source, and information at defendant's disposal with respect to the

alleged misstatements), *and*, *Jackson v. Ocwen Loan Servicing, LLC*, 2011 WL 4345449, at *5 (S.D.

Fla. Sept. 16, 2011) (blending failure to at all plead reliance, intent, resulting injury alongside failure

to plead "how and why" defendant knew of the falsity of its misstatements), *with, e.g.*, *Johns*

*Manville, Inc.*, 287 F. App'x 81, 88.  Plaintiff has in fact sufficiently pled the state-of-mind elements

of his claims, and further detailed the known and likely sources of Defendant's superior knowledge

of the information it misrepresented to Plaintiff time and again; this is more than enough to satisfy

these elements of the claims, under either the actual standard in this Circuit or even Defendant's

constricted view of state-of-mind pleading articulated in its Motion.  *See, e.g.*, *Dugas v. 3M Co.*, 101

F. Supp. 3d 1246, 1254 (M.D. Fla. 2015) (affirming that knowledge may be averred generally under

Rule 9(b) and concluding that fraud claim was properly pled when straightforward allegation that

defendant "had knowledge" of the falsehood was paired with "allegations [that] state the relevant

time period, product, and nature of [the] concealment").

With respect to the elements of Plaintiff's claims relating to **duty:**

**Plaintiff alleges:**  A detailed discussion of the disclosure and other duties and obligations that Plaintiff knew Defendant was under by virtue of its profession and attendant regulations and publications.  *See* Compl. ¶ 8.  Plaintiff also, by virtue of alleging (1) the fact and source of Defendant's unique, superior knowledge of the information it was proffering regarding the Company; and (2) that Defendant voluntarily broached these topics at all, established that a duty to disclose was in place at the time of the misrepresentations.  *See, e.g.*, *Cafaro v. Zois*, 693 F. App'x 810, 816 (11th Cir. 2017) (under Florida law, duty to disclose "exists if a defendant undertakes to disclose material information but fails to disclose that information fully").

**Defendant argues:**  It had no duty to Plaintiff because, according to Defendant, Florida offers only one avenue to establishing a duty to disclose – a relationship of trust and confidence – and therefore Defendant need not be held to its many material omissions pled in the Complaint.  Mot. at 23-24.  This misapprehends Florida law, which locates duties to disclose even in arms-length transactions once one party volunteers material information, *see Cafaro*, 693 F. App'x at 816, and offers a flexible interpretation of circumstances in which a relationship of trust and confidence arises. *See, e.g.*, *Doe v. Evans*, 814 So. 2d 370, 374 (Fla. 2002) ("such relationships are premised upon the specific factual situation surrounding the transaction and the relationship of the parties") (quotations omitted).  Defendant never addresses, let alone rebuts, Plaintiff's allegations that he felt confident placing his trust in what Defendant had to say because he was himself aware of the heightened disclosure obligations Defendant was under by regulation and publication each time they spoke on the phone.  *See, e.g.*, Compl. ¶ 8.  Once again, Defendant's decision to ignore Complaint allegations that negate its preferred arguments renders this portion of the Motion lacking.

Finally, with respect to **post-purchase reliance**[7]:

---

[7] Defendant's element-based arguments regarding Plaintiff's pre-investment allegations are exclusively derived from its faulty dependence on the Subscription Agreement, discussed *infra*.

**Plaintiff alleges:**  That he did rely, justifiably so, on misrepresentations made by Defendant after Plaintiff purchased shares in the Company, and that those misrepresentations – up to and including joint lulling by Defendant and the Company's CEO on a 2014 phone call – caused Plaintiff not to exercise shareholder rights that would have uncovered deficient leadership at the Company (which, by extension, would have uncovered Defendant's misrepresentations).  *See, e.g.*, Compl. ¶ 30.  This sufficiently alleges reliance-based elements of his claims for Defendant's conduct that had ramifications independent of the initial investment decision.

**Defendant argues:**  Once more, as part of an interpretation of the Complaint that is at minimum incomplete, that Defendant was allowed to make post-investment misrepresentations because they existed only to cover up its initial misstatements and did not carry with them any actionable independent harm.  Mot. at 21-22.  This ignores the specific harms Plaintiff pled as resulting from his reliance on these post-purchase misrepresentations, *see* Compl. ¶¶ 30-31, and therefore fails to appropriately address Plaintiff's reliance-based allegations in full.  Dismissal is inappropriate on these grounds.

## III.    The Company Subscription Agreement Did Not Grant Defendant a License to Defraud

One of Defendant's prominent arguments in the Motion is that it was allowed to issue scads of actionable misrepresentations because the Subscription Agreement between Plaintiff and the Company – which Plaintiff entered into because of Defendant's misdeeds – granted it a retroactive license to defraud.  *See* Mot. at 17-21 (claiming Subscription Agreement precludes pleading knowledge and reliance elements of Plaintiff's claims).  This belief in the curative power of the Subscription Agreement as to Defendant's various misrepresentations mischaracterizes the law; mischaracterizes the contract; and is premature.

### a.    *Legal Standard*

Under Florida law, "where an agreement is procured by fraud or misrepresentation every part of the contract is vitiated because it is well settled that a party cannot contract against liability for his

own fraud." *Global Quest, LLC v. Horizon Yachts, Inc.*, 849 F.3d 1022, 1027 (11th Cir. 2017) (citing *Oceanic Villas, Inc. v. Godson*, 4 So. 2d 689, 690 (Fla 1941)). "[A] contract provision . . . cannot preclude a fraud claim, unless the contract expressly states that it is incontestable on the ground of fraud." *Id.* at 1028. Instead, contractual disclaimers are to be evaluated alongside all other evidence uncovered across the life cycle of a case, and are not to be wielded to dismiss complaints. *Id.* at 1028-29. *See also Viridis Corp. v. TCA Global Credit Master Fund, LP*, 721 F. App'x 865, 875 (11th Cir. 2018) ("Florida [] prohibit[s] a contractual waiver that exculpates a contracting party's fraudulent misconduct."). *Accord Lower Fees, Inc. v. Bankrate, Inc.*, 74 So. 3d 517, 591 (Fla. 4th DCA 2011) (reversing dismissal of fraudulent inducement claim premised on "no reliance" clause because only "contract language which specifically and explicitly negates the right to bring [a fraud] claim" supports dismissal).

### b.   *The Subscription Agreement offers no basis to dismiss the Complaint*

As the above cases make clear, binding Florida precedent frowns on defendants who try to launder their fraudulent conduct through exculpatory provisions in contracts. This is particularly so when, as here, the fraud at issue is alleged to have caused the defrauded party to sign the very contracts those defendants later deploy as shielding them from liability. *Accord Burton v. Linotype Co.*, 556 So. 2d 1126, 1127 (Fla. 3d DCA 1989) ("Fraud is an intentional tort and thus not subject to the cathartic effect of the exculpatory clauses found in contracts.") (quotations omitted).

Defendant tries and fails to make that very unavailing argument over and over again in the Motion. Although no portion of the Subscription Agreement specifically and explicitly negates Plaintiff's right to bring claims sounding in fraud,[8] Defendant – whether arguing that Plaintiff cannot plead knowledge or reliance due to various provisions in the Subscription Agreement, Mot. at 17-21,

---

[8] Quite the opposite, in fact: one Subscription Agreement provision cited in the Motion includes language confirming its exculpatory effect does not apply in the case of gross negligence or willful misconduct, *i.e.*, fraud. *See* Dkt. No. 11-5, Mot., Ex. D, at 10, § 28(a).

or claiming that portions of the Subscription Agreement (and PPM) started the clock on the statute of limitations on the date it was executed, Mot. at 12 – persistently disregards longstanding Florida law and recent precedent flatly affirming same.  *See Asokan v. Am. Gen. Life Ins. Co.*, --- F. Supp. 3d ---, 2017 WL 3712919, at *9 (M.D. Fla. 2017) ("[T]he Eleventh Circuit recently recognized that in order to negate a claim for fraud in Florida, a contract must expressly state that it is incontestable on the ground of fraud.") (citation omitted).  All such Subscription Agreement-derived, disclaimer-based arguments for dismissal in the Motion are therefore deficient and should be disregarded.[9]

## CONCLUSION

For each and all of the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's Motion.[10]  Plaintiff echoes Defendant's request for oral argument on the Motion.

Dated:  November 21, 2018                Respectfully submitted,

*/s/ Leighton Leib*
LEIGHTON LEIB
Florida Bar No. 0119263
lleib@knoxleib.com
DAVID KNOX
Florida Bar No. 0093779
dknox@knoxleib.com
**KNOX♦LEIB, PLLC**
420 W. Platt Street
Tampa, FL 33606
Telephone: (813) 251-1844

*Attorneys for Plaintiff*

---

[9] Moreover, portions of the Subscription Agreement deployed in the Motion do not stand for what Defendant claims they stand for.  Section 2(d) of the Subscription Agreement, for example, only seeks to circumscribe the universe of *written* materials reviewed by the purchaser of Company securities; it in no way impacts a case like this which is founded on oral misrepresentations.  *See* Mot., Ex. D, at 3, § 2(d) (narrowing universe of "offering literature" relied on by Plaintiff).  Similarly, Defendant omits the crucial phrase "by or on behalf of the Company" at Section 28(a)(3) of the Subscription Agreement in making its disclaimer arguments, as may be addressed at a later date in this case.  *Id.* § 28(a)(3).

[10] If the Court nevertheless determines that some or all of the Complaint should be dismissed, Plaintiff respectfully requests leave to file an amended complaint.

**<u>Certificate of Service</u>**

I HEREBY CERTIFY that on November 21, 2018, a copy of the foregoing Response was

filed electronically with the Clerk of the Court using the CM/ECF system.  Notice of this filing will

be sent to all parties by operation of the Court's electronic filing system.


*/s/ Leighton Leib*
LEIGHTON LEIB